# MARTIN *v.* ATCHISON, TOPEKA AND SANTA FÉ RAILROAD COMPANY.

·ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 170. Submitted January 25, 1897. — Decided April 5, 1897.

The plaintiff in error was in the employment of the defendant in error as a common laborer. While on a hand car on the road, proceeding to his place of work, he was run into by a train, and seriously injured. It was claimed that the collision was caused by carelessness and negligence on the part of other employés of the company, roadmaster, foreman of the gang of laborers, conductor, etc. *Held,* that the co-employés whose negligence was alleged to have caused the injury were fellow-servants of the plaintiff, and hence that the defendant was not liable for the injuries caused by that negligence.

THE case is stated in the opinion.

*Mr. Neill B. Field* for plaintiff in error.

*Mr. E. D. Kenna* and *Mr. Robert Dunlap* for defendant in error.

Mr. Justice Peckham delivered the opinion of the court.

This action was brought by the plaintiff in error to recover damages for injuries sustained by him by being run over by a train on a railroad belonging to the defendant, near Albuquerque, New Mexico. The case was tried before a jury in the District Court of the Second Judicial District of that Territory, and resulted in a verdict for the plaintiff in the sum of $8000. Judgment having been entered, the railroad company took the case, by writ of error, to the Supreme Court of the Territory, which court reversed the judgment, and directed judgment for the railroad company, and for costs against the plaintiff, who thereupon sued out a writ of error from this court, and the case is now here for review.

On the trial evidence was given showing substantially the following facts: The plaintiff had been employed by the railroad company at Albuquerque, New Mexico, as a common laborer, "fixing the road, straightening out the rails and fixing ties wherever required"; he was about thirty-nine years of age and had been so employed by the company, through one of its section foremen, for several months prior to the happening of the accident. He was under the orders of the section foreman and was to do what the foreman told him. The section foreman was employed by the roadmaster and the foreman employed the men; the roadmaster directed the section foremen what work to do and where to do it; he laid out the work for them and told them what to do. The section foreman employed the men and saw that they did the work properly. If the foreman thought a man ought to be discharged, he would see the roadmaster or send him a request that the man should be discharged, and the roadmaster had the power to discharge him. The men under the section foreman, like the plaintiff, were paid by the agents of the company, who came along the line in a pay car.

On June 5, 1889, while the plaintiff was thus employed, he

came to the station at Albuquerque about 6.45 o'clock in the morning for the purpose of going to his work on a hand car with one Mares, his co-laborer, and Charles Smith, his section foreman. The place where they were to work was about eight or nine miles north from Albuquerque on the line of the road. A few minutes before seven the party, consisting of the section foreman, Mares and the plaintiff, started on a hand car for the place where they were to work during the day. They went north upon the road for three or four hundred yards and there the car was stopped, and the men got off and procured a barrel of water, which was placed on the car, and the men again started north to continue their ride. All three men worked the crank on the hand car, but just as they started Mares said to the foreman that he thought the work train seemed to be starting from Albuquerque towards them. The track at that point was straight and the view to the station was unobstructed. Plaintiff then turned his head backwards towards the station, when the foreman told him not to do that; that he had no business to do it, and that it was not his business to watch for trains, and that he, the foreman, would take care of that. Plaintiff thereupon turned his head away from the station and continued to look north, the way they were going. They worked the crank so that the car was going as rapidly as they could make it, all three men having their heads turned towards the north. In the meantime a work train backed out from the station at Albuquerque, going north, and continued backing rapidly until it was moving at the rate of seventeen or eighteen miles an hour. Before the men on the hand car had proceeded very far along the road they were overtaken by the work train, which ran over them, killing the foreman and badly injuring the plaintiff and Mares. Neither of the latter had heard the approach of the train; it was under the management of a conductor, and at that time there was a roadmaster on the train who had control of the line of road where the accident occurred. He was not in charge of the running of the train, but the train went to different points on the road as he had occasion to visit them for working purposes. Some of the hands on the work train saw the

hand car a short distance before it was struck, and one of them tried to communicate with the engineer of the train, but failed. No one on the hand car was looking backward or saw the approach of the work train.

It was claimed in the petition on the part of the plaintiff that the accident occurred from the neglect of the conductor and of the hands on the work train, and also by reason of the neglect of the section foreman on the hand car with the plaintiff in ordering plaintiff to face north while working the car, and in not keeping a lookout himself for the approach of the train from behind.

The defendant had filed a plea of not guilty.

Upon the trial of the action, after the evidence for both sides had been introduced and each side had rested the case, the defendant moved the court "to instruct the jury to find for the defendant upon the ground that the negligence, if any, through which the plaintiff was injured was the negligence of the fellow-servants of the plaintiff, for which the defendant is not liable." After hearing arguments, the court overruled the defendant's motion, and counsel for the defendant then and there excepted.

After the verdict for plaintiff had been rendered and judgment entered thereon, the defendant obtained a writ of error from the Supreme Court of the Territory to review the rulings of the District Court. Various assignments of errors were made, and among them was the eighth, which reads as follows: "The court erred in not sustaining defendant's motion to instruct the jury to find a verdict in favor of the defendant, and the defendant not guilty."

The Supreme Court held that whatever negligence was proved, as against the employés of the defendant, such negligence was that of fellow-servants with the plaintiff, and on that ground the judgment was reversed and judgment ordered in favor of the defendant, with costs.

The plaintiff seeks here a reversal of the last judgment.

We think the decision of the Supreme Court was right and that the judgment entered thereon must be affirmed.

The cases of *Baltimore & Ohio Railroad Company* v. *Baugh,*

149 U. S. 368; *Northern Pacific Railroad Company* v. *Hambly,* 154 U. S. 349; *Northern Pacific Railroad Company* v. *Peterson,* 162 U. S. 346; and *Northern Pacific Railroad Company* v. *Charless,* 162 U. S. 359, cover this case in all its aspects, and render it entirely clear that the employés of the defendant herein, whose negligence caused the injury to the plaintiff, were his fellow-servants at that time, and hence the defendant cannot be held liable to plaintiff for the injuries sustained by him as a result of that negligence.

The counsel for the plaintiff has argued before us that the defendant must be held responsible because the plaintiff had been directed by the foreman, under whose orders he was placed, to look north while he was on the car, and had received the foreman's assurance that he (the foreman) would warn him of the approach of danger, and that as the foreman failed to do so it was the failure of the defendant to do something which it was bound as a master to do in furtherance of the obligation it was under to see that the plaintiff had a reasonably safe place in which to perform his work. We do not perceive that the doctrine as to the duty of the master to furnish a safe place for the servant to work in has the slightest application to the facts of this case. There is no intimation in the evidence nor is any claim made that the hand car upon which the plaintiff was riding was not properly equipped and in good repair, and in every way fit for the purpose for which it was used. It was a perfectly safe and proper means of transit in and of itself from the station at Albuquerque to the point where the plaintiff was going to work. The negligence of the section foreman in failing to note the approaching train and to give the proper warning, so that the car might be taken from the track, was not the neglect of the defendant in regard to the performance of any duty which as master it owed the plaintiff. If the car were rendered unsafe, it was not by reason of any lack of diligence on the part of the defendant in providing a proper car, but the danger arose simply because a fellow-servant of the plaintiff failed to discharge his own duty in watching for the approach of a train from the south.

Upon an examination of the cases above cited it will be found that the principles therein laid down clearly and plainly cover this case.

The judgment must be

*Affirmed.*

MR. JUSTICE HARLAN dissented.