## JAMES RAMAGE PAPER CO. v. BULDUZZI.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

### No. 244.

1. MASTER AND SERVANT—ACTION FOR INJURY OF SERVANT—EVIDENCE OF RELATION BETWEEN PARTIES.

Where defendant corporation, desiring in the conduct of its business to use a bridge which had broken down, rebuilt such bridge at once under an agreement with the town by which they shared the cost, the question whether it did the work merely as agent for the town or as a principal, so as to render it responsible as master to an employé on the work, *held* properly submitted to the jury in an action by such employé to recover for a personal injury.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1004, 1276.]

2. SAME—ACT OF FELLOW SERVANT—NEGLIGENCE IN EMPLOYING INCOMPETENT SERVANT.

A master is liable for an injury to a servant through an act of a fellow servant which was due to his incompetency and unfitness to direct dangerous work of which he was put in charge, and where the master failed to exercise reasonable and proper care in his employment.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 334-351.]

3. SAME—ACTION FOR INJURY OF SERVANT—QUESTIONS FOR JURY.

The question of a plaintiff's contributory negligence *held* properly submitted to the jury under the evidence, in an action by a servant to recover for a personal injury.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1089-1132.]

4. SAME—INSTRUCTIONS.

The refusal of requested instructions on the subject of assumed risk, in an action by a servant against the master to recover for a personal injury, *held* proper, in view of the charge given.

In Error to the Circuit Court of the United States for the District of Vermont.

See 140 Fed. 95.

This cause comes here upon writ of error to review a judgment of the Circuit Court, District of Vermont in favor of defendant in error who was plaintiff below. The judgment was entered upon the verdict of a jury, who found the plaintiff entitled to damages for injuries sustained by the explosion of a blasting charge in a stone quarry. A blast of five holes had been arranged to be fired, and the man in charge as foreman undertook to discharge them. The five caps exploded, but two of the dynamite cartridges missed fire; the result was that at three holes rocks were blown out, while at two holes only earth was thrown up. It would seem that to a man experienced in blasting this would indicate that two of the cartridges had failed to explode. The man in charge, one Arighene, the plaintiff, and a fellow workman believed that all had exploded. Thereupon Arighene directed the plaintiff and another man to drill out one of the holes, which had not broken out, but had simply thrown off the dirt, which plaintiff proceeded to do. In the process of so drilling out the hole unexploded dynamite was struck by the drill and exploded, severely injuring the plaintiff. It was the theory of the case that a competent and careful foreman, seeing that a "charge" had only thrown out earth, would have made a sufficient examination to determine whether or not there was any unexploded dynamite in the hole before setting a man to drill it.

E. N. Gibson and E. L. Waterman, for plaintiff in error.
Clarke C. Fitts, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. It will not be necessary to review the authorities cited on the respective briefs; the fundamental principles of law are well-settled, and, in all essentials, there is no real conflict as to the facts.

1. The defendant contends that a verdict in its favor should have been ordered by the court, because defendant was agent for the town of Rowe in all that was done relating to the construction of the abutment of the bridge for which this stone was being blasted. And also because defendant was organized to manufacture paper, and the business of quarrying stone was beyond the scope of its corporate powers. There was evidence, however, showing that a certain bridge had broken down, which it was the duty of the town of Rowe to restore. The time, however, was unfavorable; the ground was frozen and covered with ice and snow, and it was a much more expensive job to put in the abutment than it would be after the frost should be out of the ground and the days longer. Under these circumstances the selectmen of the town deferred undertaking the work. This was a great disadvantage to the defendant as the bridge connected its mill with the railroad, and it wished to have it replaced at once. Thereupon with the assent of the selectmen, the defendant procured and paid a man named Douglass at $5 a day to take charge of the work, bought and turned over to him all the supplies, material, and outfit necessary, and paid the workmen employed both in the quarry and at the bridge. The selectmen agreed that when the bridge was finished if they could not agree on the price the town would pay for it, it should be left to any responsible parties to say what it should cost; and that whatever it cost more to do it at that time than in a more favorable time the town would not be responsible for the difference.

The total cost was $3,202, of which the town eventually paid $1,000; the balance being paid by defendant and charged off on its books to "extra construction account." In view of this testimony we think the court quite properly left it to the jury to determine whether in fact the defendant did this work for its own convenience, instructing them that if it did so, it might be held as a principal.

2. Defendant excepted to the court's refusal to direct a verdict in its favor because plaintiff was a fellow servant of Arighene, who instructed him to drill out the missed shot. The difficulty with this proposition is that it disregards the true ground of negligence which the evidence disclosed. Arighene, whether he were merely temporarily directing the operations of the other two men, or were a fully designated foreman in charge, was undoubtedly, under the federal authorities, a fellow servant with the plaintiff. Martin v. A., T. & S. F. R. R., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051. But the question which the court left to the jury was whether he was a competent fellow servant; whether the master had discharged the duty, which he undoubtedly owed to the servant, and which he could not escape by leaving the selection to some one else, of exercising reasonable care in employing this man to work with the plaintiff on this dangerous job. The court expressly left it to the jury to say whether Arighene was a fit man, saying:

"It belongs to an employer to have fit men around to have charge, reasonably fit men for the place. * * * Was he a fit man to put in charge of handling this dangerous material such as dynamite is, to put it into holes and fire it off? Was he such a man as a prudent man would put there? Supposing you are prudent men and you were there, would you have put him in charge of that blasting and firing those holes to get out those rocks? Would a prudent man do that? If he was fit, that is enough, verdict for the defendant, because the complaint is that they didn't have a fit man. If he was fit, that is enough; if he wasn't you will look into the case further."

No exception was taken to this accurate statement of the obligation of the master to be reasonably prudent in selecting competent workmen; and no request asked for any further instructions on that branch of the case. There was testimony tending to show that Douglass put Arighene in charge of the work that day before the accident, telling him to be careful and not let any of them get hurt in blasting. Douglass himself testified that it was necessary to have a foreman in charge of such work, and that it requires skill and understanding in drilling and blasting with dynamite. And when asked if this man, whom he thus put in charge, had any experience in blasting he replied: "Not that I know of." Upon this proof the jury were warranted in finding that the defendant, and Douglass to whom it had confided the duty of selection, did not exercise reasonable prudence in choosing the fellow servant to the risk of harm from whose negligence it exposed the plaintiff.

3. Defendant further excepted to a refusal to direct a verdict on the ground of contributory negligence. But the jury had plaintiff's own statement that he heard five explosions, supposed all the charges had gone off, and did not know it was dangerous to use the drill on

a hole that had not thrown up rocks as well as dirt. There was conflicting evidence as to the extent of plaintiff's experience in this kind of work, and the question of his negligence was undoubtedly one for them to pass upon.

4. Exception was reserved to the court's refusal to charge the following requests:

"(7) In attempting to remove the tamping the plaintiff assumed the risk of known and obvious dangers incident to his employment, including the risk of dangers that could not be detected nor avoided, by ordinary care.

"(8) If the plaintiff was ordered by Arighene to remove the tamping, he was not relieved from the risk and responsibility of the danger by this order, but assumed the obvious risk there was in doing the work."

The court had charged the jury, cautioning them to be careful as to this branch of the cause, that plaintiff could not recover if "in some way he brought it on himself." That, while at work under Arighene he was to do only what a prudent man would do that knew what he knew, or what he ought to have known from what he had observed and seen about this dangerous stuff. That they were to see whether it was imprudent for him to do as Arighene told him; that he wasn't obliged to risk himself in putting in dynamite unless he was of a mind to. That plaintiff could not recover if the jury could see that by his own imprudence in going on with that work, in that way, he brought the catastrophe upon himself. And that it was for the jury to say whether as a prudent man he ought to have stopped; that if it was imprudent for him to work there in that way, there should be a verdict for the defendant. To no part of the charge was any exception reserved. Although frequently confused there is a difference between "contributory negligence" and "assumption of risk," and in some cases the one principle may be controlling though the other is absent. But it will be noted that the above-quoted requests are confined to the transaction immediately preceding the catastrophe, viz., the drilling on top of the unexploded cartridge. In view of that fact we think the jury were sufficiently instructed and that it would have tended to confuse their minds had there been an effort to impress them with any distinction between contributory negligence and assumption of risk which at that stage of the transaction were closely interwoven. They were distinctly told that if a prudent man, with the knowledge he had, or ought to have had from what he had seen and observed about such dangerous stuff, would have stopped and declined to risk himself, verdict should be for the defendant. It would have given them no additional principle to apply in testing the facts, had they been instructed that plaintiff took the risk of known and obvious dangers. An "obvious" danger is one which would have been seen and observed by a reasonably prudent man. Had there been any instruction asked about an assumption of risk in going on with the work under Arighene's order, knowing the latter to be an incompetent man, a different question might be presented, but no such request was asked, and the record does not seem to indicate that plaintiff knew enough about such work or about Arighene to lead him to suspect that he was incompetent, or that he was as-

suming any risk in going on under his directions. The whole theory of the case—a theory which the jury sustained—is that had the acting foreman been competent the accident would not have happened, because a competent man could have told at a glance that the cartridges in two of the holes had not exploded and of course would not have set his men to drilling out dynamite.

The judgment is affirmed.