## KINNEAR MFG. CO. v. CARLISLE.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1907.)

### No. 1,596.

1. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The decisions of the Supreme Court of a state, as to the common-law liability of a master for injuries caused by the negligence of fellow servants, are not binding on the federal courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 977.

Conclusiveness of judgment between federal and state courts, see note to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 486.]

2. MASTER AND SERVANT—DUTY OF MASTER—PLACE AND APPLIANCES.

The positive, personal, and nondelegable duty of a master to provide a reasonably safe place in which, and reasonably safe appliances with which, to work, or a reasonably safe method of doing the work, is a duty of construction and provision, and not of operation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 171–176.]

3. SAME—LIABILITY FOR INJURY OF SERVANT—NEGLIGENCE OF FELLOW SERVANT.

A petition, in an action by a servant against the master to recover damages for a personal injury, does not state a cause of action, where the only negligence alleged is that of a foreman under whom plaintiff was working in directing the manner of using or handling machinery which is not alleged to have been defective or unsafe, if properly used.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 469–472.]

4. TRIAL—DIRECTION OF VERDICT—REFUSAL—WAIVER OF EXCEPTION.

An exception to the ruling of the court denying a motion to direct a verdict for defendant, made at the close of plaintiff's evidence, is not waiv-

ed, where the defendant does not thereafter introduce any evidence, and a formal announcement that he rests his case is not necessary.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 983.]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

H. B. Arnold, for plaintiff in error.

L. G. Addison, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This was an action by the defendant in error, James H. Carlisle, hereinafter referred to as plaintiff, against the plaintiff in error, hereinafter referred to as defendant, to recover damages for a personal injury sustained October 12, 1903, and consisting in the loss of his left arm. It resulted in a verdict and judgment for $4,500. The case was heard and determined on plaintiff's evidence. At the close thereof defendant moved the court to direct the jury to find for it. This motion was overruled. The ruling was duly excepted to and is assigned as error here. As we hold that this assignment is well taken, it is not necessary to consider any other.

The facts appearing from plaintiff's evidence, are about these:

The defendant was engaged in the business of manufacturing steel doors and shutters at Columbus, Ohio, and plaintiff was its employé. He belonged to the galvanizing department, and his work, in the main, consisted in helping to run sheets of steel through the galvanizing machine. There was another helper besides himself, and a foreman, named Grossman, set over the two. That department consisted of this machine and these three employés. The blacksmith department was in the same room, operated by a blacksmith and helper. The entire plant was in charge of a superintendent, named Volp. When plaintiff was employed by Volp, he placed him in charge of Grossman, and told him that Grossman would tell him what to do. He had been in defendant's employ since the preceding June 16th.

The motive power which ran the galvanizing machine was generated by a gas engine and the connection between the two was made by means of shafts, pulleys, and belts. The work in which plaintiff was engaged when injured was ungearing the machine. They had run out of galvanizing material, and it was necessary to shut the machine down. The custom was when the machine was shut down for any length of time to ungear it. More particularly, he was engaged in trying to hook up the belt by which the power was transmitted from the main shaft to the machine after it had been thrown off the pulley on said shaft upon which it ran. This he was doing by Grossman's direction. It had been so thrown off either by plaintiff with his hand, or with a pole, or by Grossman with a pole. The pulley and shaft were about 10 or 12 feet south of the south end of the machine, and about 10 or 12 feet from the floor. The hook on which he was trying to hook the belt was iron and movable. One end was bent so as to hook on to a gas pipe behind and above the shaft, and the other end was provided with a hook to hook up the belt. It could have been

hooked up by removing the hook from the gas pipe, and after inserting the other end therein replacing it thereon. Instead, plaintiff tried to hook it by inserting his left hand within the belt and placing it on the hook. This brought his hand between the belt and the shaft. The shaft was revolving rapidly. He had on gloves and was standing on top of an unsteady stepladder. In making the effort his hand caught upon the shaft, and at once his arm and the belt began to revolve around the shaft and continued so to do until his whole body had been thrown around it twice, his arm had been wrenched from its socket, and he had fallen to the floor.

The accident happened on Monday. This method of disposing of the belt whilst the machine was shut down had been put in operation for the first time the previous Saturday. It was so put by Grossman, the foreman. It had been suggested by the blacksmith's helper, and the blacksmith had made the hook. The belt had been hooked up by Grossman on Saturday, but not in plaintiff's presence. He had not hooked it up or seen it hooked up before the accident. The method of disposing of the belt previous thereto had been this: After it had been thrown from the pulley on the main shaft, it was also thrown from the pulley on the countershaft. It was then taken around the end of the main shaft and hung up in front of it on a piece of wood nailed there. Plaintiff, by Grossman's direction, had hung the belt up in this way at least two or three times. Obviously this method was less dangerous than the other. By throwing the belt off the pulley of the countershaft more play was given to it, and, instead of being hooked up with the revolving shaft within it, it was removed therefrom, and then hung up.

When plaintiff first made the effort to hook up the belt, he found it difficult to do so. He thereupon requested Grossman to throw the belt from the pulley on the countershaft. In response to this request, Grossman caught hold of the stepladder, and said that it was not necessary to do this; that he had hooked it up himself, and to go ahead and hook it up. It was in compliance with this direction that the effort was made which resulted in the injury. Plaintiff, at the time he made it, knew that the shaft was revolving within the belt, and that the removal of the other end thereof from the pulley of the countershaft would make it safer and easier to handle it. It was because of this that he requested its removal.

Such, then, are the facts which appeared from plaintiff's evidence. It is possible that, apart from any other consideration, they were sufficient to require that the case be submitted to the determination of a jury under proper instructions; this, on the ground that the matter of providing a method of disposing of the belt, when thrown from the pulley of the main shaft, was defendant's absolute, positive, personal, and nondelegable duty as master, and it was open for plaintiff reasonably to claim that Grossman had been intrusted by defendant with its performance; that the method provided by him was not reasonably safe, and in providing it he failed to exercise reasonable care; and that he (plaintiff) had not assumed the risk arising from said lack of safety or been guilty of contributory negligence. It is not necessary, however, that we determine this, and by referring to it we are

not to be understood as expressing any opinion in regard thereto. The want of necessity for our so doing is due to the fact that such is not plaintiff's case as set forth in his petition. He proceeds upon no such theory therein.

The facts therein alleged are that defendant, through its foreman, Grossman, negligently directed plaintiff to climb up on the stepladder and throw the belt off the pulley while the machine was in motion and connected with the motive power; that after ascending the stepladder he requested the foreman to loosen or unfasten the belt from the opposite pulley so as to enable him to remove the belt in safety; that the defendant, through its foreman, negligently refused to remove the belt from the other pulley and negligently directed him to remove it whilst it (the pulley) and the machine were revolving at such a dangerous rate of speed as to render the removal of the belt highly dangerous to him; and that in attempting to carry the directions out his hand was caught, and the injury complained of sustained. It will be noted that the allegation is that the act that plaintiff was doing when injured was throwing the belt off the pulley whilst the machine was in motion and connected with the motive power. Such, in fact, was not the case. The act that he was then doing was trying to hook the belt up whilst the shaft was revolving within it after it had been thrown from the pulley and the machine stopped. We simply direct attention to this variance without basing our action upon it.

The petition states no cause of action against the defendant. The negligent acts of which it complains are the directions of the foreman, Grossman, to plaintiff, before and after his refusal to throw the belt from the pulley on the countershaft, to throw the belt from the pulley on the main shaft, and that refusal. Such negligence was the negligence of a fellow servant. The fact that Grossman was the superior servant and plaintiff subordinate to him is not sufficient to take the pleaded case out of the fellow-servant rule. Louisville & Nashville R. Co. v. Stuber, 108 Fed. 934, 48 C. C. A. 149, 54 L. R. A. 696; Northern Pac. R. Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999; Martin v. Atcheson, T. & S. F. R. Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051; Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390; Baltimore & Ohio R. Co. v. Brown, 146 Fed. 24, 76 C. C. A. 482. It is true that the Ohio Supreme Court holds otherwise: Little Miami R. Co. v. Steven, 20 Ohio, 415; C. C. & C. R. Co. v. Keasy, 3 Ohio St. 201; P. Pt. W. & C. R. Co. v Devinny, 17 Ohio St. 198; Railway Co. v. Lewis, 33 Ohio St. 196. And that the doctrine of the Ohio Supreme Court has been embodied to a certain extent in a statute, which is binding upon the federal courts. Railroad Co. v. Camp, 65 Fed. 952; 13 C. C. A. 233; Pierce v. Van Dusen, 78 Fed. 695, 24 C. C. A. 280, 69 L. R. A. 705; Kane v. Erie R. Co., 142 Fed. 683, 73 C. C. A. 672. But this statute is limited to railroad companies, and the position of the Ohio Supreme Court as to the common-law rule is not binding on the federal courts. N. N. & M. V. Ry. Co. v. Howe, 52 Fed. 362, 2 C. C. A. 121. B. & O. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772.

Nor is the case as presented in the petition taken out of the fellow-servant rule on the ground that Grossman's negligence was a breach

of the defendant's absolute, positive, personal, and nondelegable duty, as master, to provide a reasonably safe place in which to work, or a reasonably safe appliance with which to work, or a reasonably safe method of doing its work. This duty, as has been pointed out, is a duty of construction and provision, and not of operation.

In the case of Pennsylvania Co. v. Fishback, 123 Fed. 465, 59 C. C. A. 269, in speaking of the matter with reference to railroads, we said:

"So far as safety depends upon the manner of construction and maintenance of the tracks, the duty is upon the railway company to use due care to see that they are reasonably safe. In connection with the operation of trains thereon, it is its duty to use due care to employ an adequate force of hands reasonably competent to operate them, to promulgate adequate rules and regulations for their conduct, and to exercise an adequate supervision over it; but its duty here goes no further. The duty of complying with the rules and regulations and of carefully operating the trains is a duty incumbent upon those employés to whom their operation is intrusted. All employés so engaged are fellow servants, and no recovery can be had against the railway company for an injury sustained by one of such employés due to the negligence of another."

In that case we held that no recovery could be had for a negligent direction of a yard master to an engineer and conductor to take their train over a track on which another train was standing.

In the case of American Bridge Co. v. Seeds, 144 Fed. 605, 75 C. C. A. 407, Judge Sanborn said:

"It is the duty of the master to use ordinary care to furnish reasonably safe machinery and instrumentalities with which his servants may perform their work and a reasonably safe place in which they may render their service, and this duty may not be so delegated by him that he may escape liability for its breach. Nevertheless, this duty has its rational and legal limits. It does not extend to the guarding of the safety of a place or of a machine against its negligent use by the servant. The risks that a safe place will become unsafe, or that safe machinery will become dangerous, by the negligence of the servant who uses them, is one of the ordinary risks of the employment which the servants necessarily assume when they accept it. It is a risk of operation, and not of construction or provision, and the duty to protect place and machinery from dangers arising from the negligence in their use is a duty of the servants who use them, and not that of the master who furnishes them."

In that case a workmen engaged upon the construction of a bridge, whilst returning upon a loose plank from the stringers of the false work of the bridge across an open space between the stringers and rails parallel thereto upon which a traveler ran carrying block and tackle and other machinery, whence he had gone by direction of the foreman to hitch the runner of the tackle to some iron cords, was injured by reason of the foreman giving the man, who operated the block and tackle by means of an engine, a signal to raise the load rapidly and its swinging as it arose against him and the plank and knocking them to the ice below. It was held that no recovery could be had because of the negligence of the foreman. This case is valuable as containing a reference to all relevant authorities and for the clearness and force with which it presents the law.

Here there is no allegation that defendant negligently provided a place in which to work, or an appliance with which to work, or a method of working, that was unreasonably unsafe. The allegations are

that through its foreman, Grossman, it negligently directed plaintiff to throw the belt off the pulley of the main shaft, negligently refused to throw it from the pulley of the countershaft after plaintiff requested Grossman so to do, and, after the refusal, directed plaintiff to so throw the belt. The substance of the allegations, therefore, is that, through its said foreman, defendant negligently directed plaintiff to throw the belt from the pulley of the main shaft without its being thrown from the pulley of the countershaft. The allegation that defendant, through Grossman, so did, cannot be construed to mean that it expressly authorized Grossman to give such direction, or that the method provided by defendant for ungearing the machine was as directed by Grossman. It can be construed to mean no more than that Grossman gave such direction, and that it was defendant's act, because of Grossman's superiority over plaintiff. Indeed, it is apparent, from the manner in which plaintiff presented his case before the jury by the evidence, that the theory thereof which he had was that defendant was responsible for Grossman's act, because Volp, when he was employed, put him in charge of Grossman, and told him that Grossman would tell him what to do, a fact of no greater legal significance than the fact that Grossman was superior to plaintiff. This is evident from the fact that it was only upon the cross-examination of plaintiff's witnesses that facts were developed which possibly may reasonably be claimed as tending to show that defendant negligently provided an unreasonably unsafe method of ungearing said machine.

The negligence as alleged in the petition, therefore, was simply the negligence of Grossman in the operation of the machinery provided by defendant, and consequently the negligence of a fellow servant. The fact that defendant had provided a reasonably safe method of ungearing the machine, such, for instance, as was in use before the change made the Saturday preceding the injury, was not inconsistent with any allegation of the petition. The decisions of this court in the cases of Western Union Tel. Co. v. Burgess, 108 Fed. 26, 47 C. C. A. 168; National Steel Co. v. Lowe, 127 Fed. 311, 62 C. C. A. 229, Chambers v. American Tinplate Co., 129 Fed. 561, 64 C. C. A. 129, and National Refining Co. v. Willis, 143 Fed. 107, 74 C. C. A. 301, have no application to the case as presented by the petition. It must be held, then, that the petition did not state a good cause of action against the defendant, and certainly not the possibly good cause of action developed by the evidence, and on this ground defendant was entitled to have the jury directed to return a verdict for it; the defectiveness of the petition being in nowise aided by the answer.

It is urged, however, that the defendant in some way waived its exception to the ruling of the court denying its motion to instruct the jury to find for defendant made at the close of the plaintiff's evidence. It is difficult to make out the exact basis of this position. Decisions such as the following, to wit, Columbia & Puget Sound Ry. Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405, and Union Pac. Ry. Co. v. Callahan, 161 U. S. 91, 16 Sup. Ct. 493, 40 L. Ed. 628, are cited in support thereof. In those cases it was held that error in overruling the motion for a peremptory instruction made by defendant, at close of plaintiff's testimony, was waived by defendant thereaft-

er introducing evidence; but no such thing happened here. Defendant introduced no evidence after its motion was overruled. In the cross-examination of plaintiff's witnesses, they were asked about certain photographs of the place of injury by defendant, and possibly it may be said that they were then introduced in evidence by defendant. It would seem that it is claimed that because these photographs were used by defendant's counsel in argument before the jury at the close of the evidence, a fact, however, not appearing from the record, and subsequently attached to the bill of exceptions, if not made a part of it, this case comes within the above rule. But so using and attaching them as having thus been introduced in evidence was not the introduction of them in evidence after the overruling of the motion. They were introduced in evidence, if introduced at all, before the motion in the course of the cross-examination of plaintiff's witnesses.

Again, it is emphasized that, in these and such like decisions, it is stated that the refusal to give such motion cannot be assigned as error, unless the defendant rests its case. It would seem that it is thought that the defendant must formally announce that he rests his case; but this is not necessary. All that is meant is, as before stated, he must not thereafter introduce any evidence. If he does, he does not rest his case. If he does not, he does rest it, and rests it on plaintiff's evidence alone.

The judgment of the lower court must therefore be reversed, and the cause remanded, with directions to award a new trial.