### KELLY v. JUTTE & FOLEY CO.

(Circuit Court of Appeals, Third Circuit. November 23, 1900.)

#### No. 10.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.
Defendant company, which was engaged in the construction of a bridge, furnished for use in the work a steam derrick, which was complete and properly constructed, but required to be set in position and secured before being used; and employés were directed to perform that work, and materials therefor were furnished them. Before they had completed the fastenings they were temporarily called away, and a foreman, who was a fellow servant with plaintiff, ordered the derrick to be used, although he had been told by one of the workmen that it was not yet secured and its use was unsafe. The derrick gave way by reason of the absence of such fastenings, and plaintiff was injured. *Held*, that the injury was not due to the failure of defendant in its duty to furnish a reasonably safe place to work or a safe appliance, but solely to the negligence of the foreman, plaintiff's fellow servant, for which defendant was not liable.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

E. Spencer Miller, for plaintiff in error.
Joseph H. Taulane, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

DALLAS, Circuit Judge. Whatever may have been the cause of the plaintiff's injury, it is certain, as matter of fact, that it was not due to any negligence committed directly by the defendant, but to the conduct of one or more persons who, under the now settled law, were the plaintiff's fellow servants. Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. It was neither alleged nor proved, and is not now asserted, that the defendant was at fault in the selection of those servants, or that its retention of them up to and at the time of the accident in question was culpable. It is, however, contended that the disaster which befell the plaintiff was occasioned by the failure of the defendant to discharge its own personal duty to exercise due care respecting the safety of the place and of the instrumentalities provided for doing the work. We agree that such a duty is owing by the master to the servant, and that his liability for its breach cannot be shifted or evaded by intrusting its performance to another; and the only question in this case, as we understand it, therefore, is whether any dereliction in this regard was the proximate cause of the plaintiff's hurt. The obligation of the master as to place does not require him to do more than select (if selection be possible) a place which, under the circumstances, and especially in view of the nature of the particular work, shall not be an unreasonably dangerous one; and as, in this instance, the work in hand was the building of a bridge, we are at loss to conceive how any other place than that at which it was to be built could have been reasonably chosen. Moreover, the plaintiff had had considerable experience in such labor as he was then performing; and the ingenious suggestion which has been made, that the derrick presently to be referred to was an "erection," an "environment," which rendered the place itself especially unsafe, is, we think, too subtle and refining to be practically applied. The plain fact is that the derrick was not a part of the place, but was brought there for use precisely as the other implements and the materials were. It was an appliance, and as an appliance, though the distinction may not be important, we will deal with it.

The Jutte & Foley Company, defendant below and here, being engaged in the construction of a bridge, employed Michael Kelly, plaintiff below and here, to do certain work in and about that construction. On the morning of the day upon which the accident occurred, and previously, a certain "bucket" had been raised and lowered by a boat derrick. The foreman of the carpenters and his gang had been engaged for two days in preparing a shore derrick to be used instead of this boat derrick. These carpenters were called to the opposite side of the river before the shore derrick had been fully made ready, but everything had been done except boring holes in the cap log upon which it was to rest, and inserting the proper bolts therein to hold it in place. These bolts, however, were at hand, and one of the carpenters was about to go for the auger to bore the holes when the work was interrupted. This man told his

foreman, in the presence of one Bennett, who, though described as a superintendent, was none the less a fellow servant, that the cap log had not been made fast, and particularly called attention to the fact that this would render any present use of the mechanism unsafe. Yet the engineer, early in the afternoon, started the engine and attempted to operate the derrick with a full bucket attached; but the bucket could not be raised, and the engineer was then told by Bennett to increase the supply of steam. Accordingly another effort was made, and thereupon the unfastened cap log was forced out of place, the derrick fell, its boom struck Kelly, and he was seriously hurt. That the derrick in question was, in itself, a reasonably safe appliance, is undeniable. It was a complete and perfect implement. All that it was necessary to do was to put it where it was to be used, and there properly fasten it; and the work which this involved was, in our opinion, an incident which belonged to the general employment, and which, therefore, the employer could rightfully commit to the employed. The structure, as it had been supplied, lacked nothing which was essential to its existence as a derrick. Its individuality was palpable and distinctive. It was a perfected "apparatus for lifting and moving heavy weights." Cent. Dict. & Enc. Under a contract to furnish a derrick, its delivery would, beyond question, have been a conforming delivery; and if, in such a case, its wholeness would be evident, how, in this case, can it be possible to gainsay its integral completeness merely because something additional, but not intrinsically affecting it or any of its components, had still to be done to make it serviceable? It might have become necessary, as the work progressed, to use it at some other point than that at which it was originally placed. This would have involved its removal and refastening. But surely these matters would, in transferring the derrick, pertain to the general employment, and we do not perceive that any distinction in this respect can reasonably be made between the first occasion of setting it up and any subsequent similar occasion. A composite construction is not necessarily suggested whenever it is proposed that two distinct things shall be physically connected, and the adjunct which was designed to support this derrick was no more made a part of it than the adjacent soil would have been made, had a hole been dug directly in the ground for reception of the mast. It could hardly be supposed, we think, that the Jutte & Foley Company was obliged, at its peril, to itself attend to the mooring and adjustment of the boat derrick; and yet, as we apprehend it, the very ingenious argument which has been presented on behalf of the plaintiff would be quite as pertinent to a derrick afloat as to a derrick ashore. It is conceded, or, if not conceded, may be assumed, that this derrick, separately considered, was a fit one; for it is not claimed that the accident in question was in the slightest degree due to any imperfection in it. The sole complaint is that it was not properly bolted, but it certainly was intended that it should be, and the bolts, as well as the necessary mechanics and tools, had been actually and adequately supplied. In what, then, even with respect to the fastening of the derrick, was there any negligence? The most that can

be said is that it was not continuously accomplished, and we are not aware of any rule of law which prescribed that it should have been. The derrick was, it is true, set in motion when it ought not to have been, but that was done by a fellow servant; and this quite separate and distinct default, not the absence of the bolts from the cap log, was the proximate cause of Kelly's injury. "In order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of attending circumstances"; and obviously the harm which Kelly suffered was not the natural and probable consequence of the interruption of the work of the carpenters, and one which ought to have been foreseen as likely to flow from it. It resulted from "a new cause, and a sufficient cause,"—the premature and forced operation of the engine; and for that act the appellee was not, under any possible aspect of the case, responsible. It did not do it, nor order it to be done, and cannot be said to have even tacitly or passively induced it; for it is admitted—indeed insisted—that it was really directed by Bennett, who in fact, and as the plaintiff further admits, had been expressly warned that the work of preparation was unfinished. It may be conceded that the engineer, in view of Bennett's direction to him, was not at fault; but the only effect of this concession is to cast the blame upon Bennett, who, as well as the engineer, was a fellow servant of Kelly. It does not fix it upon the Jutte & Foley Company, which, as to all three of them, stood in the legal relation of master. Scheffer v. Railroad Co., 105 U. S. 249, 26 L. Ed. 1070; Dredging Co. v. Walls, 28 C. C. A. 441, 84 Fed. 428; Railroad Co. v. Conroy, supra. The judgment is affirmed.