### BALTIMORE & O. R. CO. v. BROWN.

(Circuit Court of Appeals, Third Circuit. May 28, 1906.)

#### No. 26.

1. MASTER AND SERVANT—FELLOW SERVANTS—FOREMEN AND WORKMEN.

A mere foreman or gang boss is a fellow servant of those working with or under him and for his defaults by which a fellow servant is injured the master is not responsible, unless the duty as to which the default is made is an absolute duty of the master the performance of which has been delegated to such foreman.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 433, 449.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

2. SAME—INJURY OF SERVANT—NEGLIGENCE OF FELLOW SERVANT.

Defendant railroad company owned barges on which cars were transported into a dock to be loaded from a pier alongside. There were two parallel tracks on the barge and between them a platform at about the height of the car doors used in loading the cars. There was a space a foot wide between the platform and the cars and iron plates were provided to be placed across such space from the car doors to the platform. Plaintiff was a workman employed by defendant with others in loading cars on such a barge under direction of a foreman. Having occasion to move one of the cars the foreman directed that the plate be not replaced and plaintiff while assisting to roll a cask from such car to the platform in obedience to an order of the foreman, without knowledge or notice that the plate was not in place stepped backward into the opening and fell and was injured. *Held*, that defendant having provided proper appliances to make the work safe was not under the personal duty to see that such appliances were replaced after being temporarily removed by the workmen and that plaintiff's injury was due to the negligence of the foreman who was his fellow servant for which defendant was not liable but which was one of the assumed risks of the employment.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 142 Fed. 911.

Wm. B. Linn, for plaintiff in error.

Thomas Raeburn White, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and LANNING, District Judge.

GRAY, Circuit Judge. An action in trespass was brought in the court below by the defendant in error, hereinafter called the plaintiff, against the plaintiff in error, hereinafter called the defendant, to recover damages for personal injuries sustained by plaintiff while employed by defendant. The plaintiff had a verdict, upon which judgment was entered in his favor in the court below, and the writ of error sued out by defendant brings the case into this court. The evidence set forth in the record shows that the defendant had twelve freight stations in Philadelphia, all under the supervision of a general freight agent, who was represented at each station by an assistant freight agent. One of these freight stations was a certain pier No. 12 in the Delaware river, to which freight cars of the defendant company were brought upon barges, which were moved in a dock alongside the pier, to be unloaded and loaded. One of these barges was so moved at the time of the accident complained of, and hogsheads of tobacco were being loaded from the pier into the cars on the barge. To accommodate the cars, there were two separate tracks, one on each side of the barge and parallel thereto. Between the tracks a platform ran lengthwise of the barge, six or eight feet wide, and at an elevation a little lower, or nearly even with the floors of the cars on each side. Between the cars and the edge of this elevated platform, there was an open space about 12 inches wide. For the purpose of facilitating the loading and unloading of heavy articles from or onto the platform, iron plates of sufficient length and width were provided by the defendant company to bridge the space between the door and the side of the car and the platform. At the time of the

accident, large casks or hogsheads of tobacco were being rolled from the pier on a gang plank into one of the cars on the track next to the pier, across the same and out of the door on the opposite side of the car onto the platform, to be loaded into a car on the other track. This was being done by four or five men employed by defendant, one of whom (Mulch) acted as gang boss or foreman, and directed the work.   One of the hogsheads had been thus rolled from the pier through the car nearest thereto, onto and across the platform, to the car to be loaded, one of the iron plates provided for that purpose being used to bridge the open space betwen the car door and the platform.   In the movement of this hogshead, the gang boss assisted, standing with another man in front of the hogshead to steady it, as it was rolled across the floor of the car and out the opposite door onto the platform.   It then appearing that the doors of the car through which the hogsheads were to be rolled, were not conveniently situated with reference either to the pier or to the car to be loaded on the other side of the platform, the cars next the pier were pushed ahead some feet, and the iron plates from the doors to the platform were necessarily displaced.   Mulch then summoned the plaintiff, who had been working at some other place, to take his (Mulch's) place in loading these hogsheads into the cars on the barge.   It seems that it was more convenient to so load them when the tide was high, and as it was then falling, Mulch told one of the men engaged in the work, to never mind replacing the iron plates from the door of the car to the platform, as he "wanted to rush the hogsheads in."   By his direction, the plaintiff assisted in moving the next hogshead from the pier, and when it was being rolled across the first car, by like direction, he took the place Mulch had before occupied, in front of the hogshead, between two other men, walking backward toward the door next the platform, and stepped out, expecting, as he said, the plate to be in its usual position at the door.   Owing to its absence, he stepped into the hole or space between the car and the platform, and fell, the hogshead rolling out over him, whereby he suffered the injuries complained of.   Neither the general freight agent, nor the assistant freight agent in charge of this particular station were present, or had in any way interfered with the placing of the plates at the doors of the cars.

The plaintiff's contention as to the liability of the defendant, is based upon the following averments in the declaration:

"The defendant, its superintendent, or vice principal, with full knowledge of the danger and without informing the plaintiff of it, specifically ordered the plaintiff in front of the cask and that he should steady it as it was being rolled into the car.   In pursuance of the company's orders, the plaintiff, believing he was in perfect safety, in order to steady the cask, was forced to step backward, and in doing so fell into a hole on the barge, unknown to him at the time, but known to the defendant and vice principal, whose duty it was to have the hole covered or to inform the plaintiff of the danger."

It is in evidence, and not disputed, that the person responsible for not replacing the plates after the movement of the cars, was Mulch, the gang boss or foreman who had that authority and control that is necessarily reposed in one of several men engaged in such work

as was here being performed. He was in no sense such a vice principal or representative of the defendant, as to take him out of the class of fellow servants of the plaintiff, or to impose liability upon the defendant, even if the situation had been such as to attach liability to the interference of a vice principal. If plaintiff has a right to recover at all, it must be upon the ground that the injuries of which he complains resulted from the neglect of the duty of the master to exercise reasonable care in providing a safe place in which and safe tools and appliances with which his servant is to work, and also due care in the selection of those with whom he is to work. This duty is an absolute duty, sometimes called a personal duty of the master, and cannot be delegated by him so as to avoid liability for its nonperformance. The one who may be charged for the time being with the performance of this duty, performs it for and in place of the master, and no matter what his grade of service may be, whether highest or lowest, his default is the default of the master.

In cases like the present, it is essential, then, to inquire whether the negligence averred pertains to such an absolute or personal duty of the master. There is no suggestion that there had been any lack of care in the selection and employment of Mulch and the other fellow servants of plaintiff. The physical situation disclosed by the testimony was not more than ordinarily dangerous. The elevated platform that ran between the tracks on the barge for the convenient loading and unloading of cars across the same, was faultless in structure, so far as the testimony shows, and at no more than the proper distance (12 inches) from these tracks. It can hardly be said that, even without plates or gang boards at all, it would have been an unsafe place in which to work, so far as the ingress and egress to and from the car by the workmen was concerned, the open space between the platform and the car being obvious to any one with the ordinary faculties of perception. These plates were presumably furnished to facilitate the movement of large and heavy articles, like these hogsheads, from the car to the platform, as also for the convenience and safety of those engaged in performing such work. At all events, the plates were provided by the defendant, and their regular use for the purposes mentioned established. So far as such provision was a duty, it was undeniably performed, and we cannot say that that duty extended so far as to require of the defendant that it should be responsible for the placement of the plates, whenever the movement of such articles as these hogsheads might require it. They were not permanent appliances affixed either to the car or the platform. They were necessarily movable and casual appliances, and required to be placed and adjusted for use as occasion demanded. They were necessarily displaced each time the cars were moved, to be replaced by those engaged in or in charge of the work when again required. Proper appliances, such as these plates, having been provided by the master, his personal duty, if any, was performed. The placing, replacing, and adjustment necessary for their use, belonged to those who were working for the time being, and could not, from the nature of things, be supervised and controlled in each particular instance by

the defendant. Mulch, with the other workmen of the gang, including the plaintiff, were fellow workmen employed by the same master, working together under a common control, and to the same end; that is, in this instance, the removal of these hogsheads from the pier to the car into which they were to be loaded. It is well settled in reason and by authority, that a mere foreman or gang boss is a fellow servant of those working with or under him, and for his defaults, by which a fellow servant is injured, the master is not responsible, unless the duty as to which default is made is an absolute duty of the master, the performance of which has been delegated to such servant. But when that is not the case, the negligence of such a person is one of the ordinary risks of the employment undertaken by every one who enters the service of another. The master's negligence, on the contrary, is never one of the risks so undertaken. From what has been said, it must be apparent, that Mulch's admitted negligence, in directing that the plate be not replaced after the moving of the car, and in failing to inform plaintiff of the fact that it had not been replaced, was the negligence of a fellow servant, and not the negligence of the defendant.

This case, upon its undisputed facts, is so far within the line laid down in a series of decisions subsequent to the Ross Case, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, that it is hardly necessary to do more than refer to them. These decisions have illuminated the whole subject of master and servant in the respect we are now considering it, and have settled the principles upon which the liability of the master, where the allegation is that he has failed in the performance of any phase of the absolute duties above referred to, can be predicated. It is the character of the duty, rather than the grade of the servant or employé whose negligence of it causes the injury, that must determine the liability of the master. Did the negligence in question pertain to an absolute or personal duty imposed by law upon the master? If it did, no delegation of that duty to another, in any grade of his service, can relieve the master's liability for nonperformance of that duty. There is sometimes difficulty in ascertaining whether the negligence does or not pertain to such absolute duty of the master. We think, however, there is no such difficulty in this case. The undisputed evidence shows no want of ordinary care in the selection and employment of Mulch, or in making the barge platform and pier reasonably safe places on which to work, and the provision of the plates to bridge the space between the platform and the cars, satisfy any reasonable demands upon the defendant for safe appliances in connection with the work to be done. Under these circumstances, as we have said, the negligence of the foreman (Mulch) in not replacing the plate after the car was moved, was the negligence of a fellow servant, the risk of which was of course assumed by the plaintiff, when he entered into the employment of the defendant. Where tools or appliances that are to be used only as occasion requires, are furnished by the master, their negligent use by one servant resulting in injury to another servant, cannot be imputed to the master.

In the case of Alaska Mining Co. v. Whelan, 168 U. S. 86, 18

Sup. Ct. 40. 42 L. Ed. 390, the plaintiff and another workman were directed by one Finley, who was their foreman or boss in the work in which they were engaged, to work on a pile of broken rock in a certain mining chute of defendant. It was Finley's duty to direct when the rock from any particular chute was to be drawn, and it was his custom to go into the pit and notify the men when he was going to draw the chute. Without such a notice to plaintiff, or his co-worker, Finley ordered the chute to be drawn and plaintiff went through with the mass of rock and was injured. The plaintiff had judgment in the circuit court, on the ground that it was the master's duty to provide a reasonably safe place for its employés to work in, to keep the chutes, through which the rock was to be drawn, in good condition, and to notify the workmen engaged in breaking rock when the chute would be drawn, and that the delegation of this latter duty to the night boss did not relieve the master from liability. This judgment was affirmed in the Court of Appeals for the Ninth Circuit. In reversing this judgment, the Supreme Court of the United States (168 U. S. 89, 18 Sup. Ct. 41, 42 L. Ed. 390) uses the following language, which is closely applicable to the present case:

"Finley was not a vice principal or representative of the corporation. He was not the general manager of its business, or the superintendent of any department of that business. But he was merely the foreman or boss of the particular gang of men to which the plaintiff belonged. Whether he had or had not authority to engage and discharge the men under him, is immaterial. Even if he had such authority, he was none the less a fellow servant with them, employed in the same department of business and under a common head. There was no evidence that he was an unsuitable person for his place, or that the machinery was imperfect or defective for its purpose. The negligence, if any, was his own negligence in using the machinery or in giving orders to the men."

The latest case in the Supreme Court is that of the Northern Pacific Railway Co. v. Dixon, 194 U. S. 346, 24 Sup. Ct. 686, 48 L. Ed. 1006. In this case, the negligence of a local telegraph operator and station agent, in observing and reporting by telegraph to the train dispatcher the movement of trains past his station, which caused the death of a fireman of the company, without any fault or negligence of the train dispatcher, was held not to be the negligence of a vice principal for which the railway company is liable, but the negligence of a fellow servant of the fireman, the risk of which he assumes. Mr. Justice Brewer, in delivering the opinion of the Supreme Court, quotes from Whittaker v. Bent, 167 Mass. 588, 46 N. E. 121, the following felicitous statement by Mr. Justice Holmes:

"The absolute obligation of an employer, to see that due care is used to provide safe appliances for his workmen, is not extended to all the passing risks which arise from short-lived causes." B. & O. R. R. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Central Railroad Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181; Northern Pacific R. R. Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; Northern Pacific R. R. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994.

The counsel for appellee apparently rely upon the opinion of this court, in the case of Penna. R. R. Co. v. La Rue, 81 Fed. 148, 27

C. C. A. 363. We do not think, however, that the ratio decidendi of that case conflicts with that of our opinion in the present case. The injuries inflicted upon a locomotive fireman in that case, were due to the shifting of large pieces from the top of a car loaded with lumber. The car was a gondola car and the lumber was held in place by wooden standards along the sides. A gondola car, when used as a lumber car, must be equipped as such, and the standards necessary for this equipment must be sufficient for their purpose, that is, long enough and strong enough to hold the lumber piled upon the car in place. These standards are part of the permanent equipment of a car so used, and it was undoubtedly the duty of the defendant company, as being a master's duty, to see that the car in this respect was fit for the purposes for which it was used, by a proper equipment of standards. Some of these standards were of hemlock, instead of oak, as they ought to have been, and gave way to the pressure of the lumber, allowing some of the sticks to protrude, which occasioned the injury to the plaintiff. A defect in the standards or equipment of the car, was a defect in the car itself, as a lumber car, and was due to the negligence of the defendant company, as much as would have been a defect in a box car that allowed any portion of its load to escape, to the injury of one situated as the plaintiff in the case was. Judge Acheson, in delivering the opinion of the court, says:

"In the present case, the negligence which caused the mischief was not the improper or insecure loading of the car, for in this regard there was no fault, nor was this a case of the negligent use by the defendant's employés of safe appliances. · The ground of complaint here is, that the defendant failed in the positive duty it owed to the plaintiff to equip the car with reasonably safe appliances for the service in which it was employed. * * * Its whole duty to the plaintiff was not fulfilled, short of the actual proper equipment of the car."

In another place, the learned judge says:

"In the case of a low sided gondola car employed in the transportation of lumber, side standards to keep the load in place * * * are appliances necessary for the proper equipment of the car, and as essential to the safe transportation of the load as is a proper car body."

As we think the learned court below erred in refusing defendant's request for peremptory instructions to the jury, to render a verdict for the defendant, and also in refusing defendant's motion for judgment in its favor, non obstante veredicto, the subject of the first, second and third assignments of error, it will not be necessary to consider those assignments which concern alleged errors in the charge of the court.

For the reasons stated, the judgment below is reversed, with direction to enter a judgment in favor of the defendant.