WOOD v. POTLATCH LUMBER CO.†

(Circuit Court of Appeals, Ninth Circuit. May 4, 1914.)

No. 2337.

1. MASTER AND SERVANT (§ 196*)—INJURIES TO SERVANT—FELLOW SERVANTS.

Plaintiff, who had been employed by defendant in the operation of a sawmill to perform various duties, was directed to assist in making repairs in the brickwork about the base of a refuse burner, and while so engaged was injured by a piece of a timber thrown from the conveyor attached to the burner through the negligence of F., who with two assistants had just completed the installation of a new sprocket wheel at the top of the conveyor. F. was in immediate charge of installing the wheel, and another was in charge of the brickwork, but both were subordinate to H., who was a foreman inferior to the superintendent, who in turn was subject to the orders of the general manager. *Held,* that plaintiff and F. were fellow servants at common law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 375–378, 486–488; Dec. Dig. § 196.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

2. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—DANGEROUS PLACE.

Where the place where plaintiff was employed was not dangerous or defective immediately before the accident in which he was injured by being struck by timber negligently thrown from a sawmill refuse conveyor to the ground by plaintiff's fellow servant, and the throwing of the timber would not have been dangerous had care been exercised to warn persons who might be below, or to see that no one was below, defendant was not negligent in failing to provide plaintiff a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

3. MASTER AND SERVANT (§ 141*)—INJURIES TO SERVANT—MANNER OF WORK —DUTY TO PRESCRIBE.

The rule that a master is required to prescribe the manner in which work committed to servants shall be performed extends only to services of a complicated and dangerous character, requiring skill and experience, and had no application to the taking down a scaffold used to install a new sprocket wheel in a refuse conveyor in a sawmill, involving the lowering of timbers from the scaffold to the ground.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. § 141.*]

In Error to the District Court of the United States for the Eastern District of Washington; Frank H. Rudkin, Judge.

Action by M. C. Wood against the Potlatch Lumber Company. Judgment for defendant, and plaintiff brings error. Affirmed.

W. H. Plummer and Joseph J. Lavin, both of Spokane, Wash., for plaintiff in error.

Edward J. Cannon, George M. Ferris, and C. E. Swan, all of Spokane, Wash., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

DIETRICH, District Judge. This action was brought to recover damages for an injury received by plaintiff while in the defendant's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied July 6, 1914.

employ. There was a verdict in his favor for $5,000, notwithstanding which the court entered judgment dismissing the action. By an express agreement in the court below, all questions are eliminated, excepting only the one whether, as a matter of law, the evidence is sufficient to support the verdict. The record is very brief, and the testimony is without substantial conflict. The plaintiff was one of 500 or 600 men employed·by the defendant in the operation of its sawmill at Potlatch, Idaho. On September 21, 1911, the day of the injury, he and others were engaged in repairing the "burner," and while in the discharge of his duties he was struck upon the head and severely injured by a piece of timber thrown down from the conveyor by one Fennell, a coemployé. It is conceded that the act constituted negligence upon the part of Fennell, and that the plaintiff was free from blame; and the only question, therefore, is whether Fennell's negligence is to be imputed to the defendant. The court below held that, under the fellow-servant rule, the defendant was not chargeable therewith. The plaintiff excepts to this view, and further contends that the defendant was negligent in not providing a safe place to work and in failing to prescribe a method for carrying on the work in which the men were engaged.

[1] The conveyor is used for the purpose of carrying refuse from the sawmill proper to a receptacle built of brick and mortar, called the burner. It is about 125 feet in length, and by bents is supported in the position of an inclined plane; the mill end being about 4 feet and the burner end about 45 feet from the ground. A contrivance in the nature of an endless belt passes over a sprocket at the burner, and upon this belt the waste is carried from the mill and dumped into the burner. Two or three days before the accident, Fennell had been directed to take two other men and put in a new sprocket wheel. In order to do this, it was necessary to erect a temporary scaffold, and for that purpose several pieces of timber were taken from the mill and carried upon the conveyor to the burner, and there placed in position. In the meantime the plaintiff, who it seems had been in the employ of the defendant for about two years, with various duties, was directed to assist in making repairs in the brickwork about the base of the burner. Upon the day in question, the men engaged upon the wheel, having finished the job and taken down the scaffold, were disposing of the timbers which they had brought up for that purpose. Apparently without any reason for so doing, after carrying them down along the·conveyor toward the mill 25 or 30 feet, Fennell directed that they be thrown to the ground. After five or six of them had been so disposed of, the plaintiff, who had gone to one of the outbuildings for material, had occasion upon his return to pass under the conveyor, as was more or·less customary, when one of the falling timbers struck him upon the head. No lookout was kept, and it is doubtful whether any warning was given. Fennell was in immediate charge of the work of installing the wheel, and a man by the name of Nelson of the brick repairs. Both were subordinate to one Hibbard, and Hibbard in turn was inferior to the superintendent, Seymour, who was subject to the authority of a Mr. Laird, apparently the general

manager. The accident occurred in the state of Idaho. Section 18 of the Revised Codes of that state is as follows:

"The common law of England, so far as it is not repugnant to, or inconsistent with, the Constitution or laws of the United States, in all cases not provided for in these Revised Codes, is the rule of decision in all the courts of this state."

The rule of the common law thus expressly adopted has not been modified by other legislative provisions, and it is therefore controlling. Applying this rule to the circumstances of the case, we entertain no doubt that Fennell and the plaintiff were fellow servants. Tweeten v. Tacoma Ry. & Power Co., 210 Fed. 828, 127 C. C. A. 378; Baltimore Ry. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 781; Central Ry. Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; N. P. Ry. Co. v. Charles, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999; Martin v. Atchison Ry., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051; Alaska Treadwell G. M. Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390; N. P. Ry. Co. v. Dixon, 194 U. S. 338, 24 Sup. Ct. 683, 48 L. Ed. 1006; Texas Ry. v. Bourman, 212 U. S. 531, 29 Sup. Ct. 319, 53 L. Ed. 641; Bentler v. Grand Trunk Ry., 224 U. S. 84, 32 Sup. Ct. 402, 56 L. Ed. 679.

[2] But the contention most vigorously pressed by the plaintiff is that the case is not one for the application of the fellow-servant doctrine. It is urged in that behalf that the accident was due to the failure on the part of the master to provide a reasonably safe place to work, a default the responsibility for which the master cannot shift It is not suggested that the premises were defective or unsafe immediately before or immediately after the accident, or that there was any danger other than from the falling timbers, and it is, of course, conceded that the timbers fell, not by accident, but as the result only of Fennell's willful act. Fennell's intelligence and general competency are not called into question, and the defendant had no reason to anticipate that he would take such a reckless course. Admittedly the timbers could have been carried back in the same manner in which they were brought up, or, for that matter, they could have been safely thrown to the ground at the very place where the accident occurred. If, under such circumstances, the negligence of the servant is chargeable to the master, the cases would indeed be rare where the latter could escape liability. It is futile for the plaintiff to argue that he makes no complaint of the manner in which the timbers were thrown down, but only that they were thrown down at all. The throwing of the timbers down did not of itself constitute negligence; such a method involved no inherent or unavoidable danger. If some one had stood below to give warning, no one could have been harmed. So that primarily the negligence consisted, not in the selection of the place where the timbers were discharged, but in the manner of their discharge. If this be negligence of the master, then in every case where, in the erection of a building, one workman willfully or carelessly lets fall upon a fellow workman a tool or piece of material, the employer could be held liable. Suppose that Fennell had carelessly let a hammer drop while installing the new wheel, and it had fallen upon

and injured the plaintiff working below, or Nelson had carelessly cast aside a brick, and it had struck and injured the plaintiff, precisely the same principle of liability would be involved. But it is unnecessary to multiply illustrations; the contention is thought to be without merit.

[3] While not very clearly articulated, the plaintiff's further point seems to be that the defendant failed in its duty in that it set Fennell at a piece of work without prescribing the manner in which it should be performed. The principle invoked, however, extends only to services of a complicated and dangerous character, requiring skill or experience. The details even of dangerous business, and simple tasks as a whole, may be rightfully left to the common sense of the workmen. In Deye v. Lodge & Shipley Machine Tool Co., 137 Fed. 480, 70 C. C. A. 64, the Circuit Court of Appeals for the Sixth Circuit, speaking through Judge Lurton, discusses the extent and limitations of the principle, and applies it to facts not unlike those involved in the instant case. It is there said:

"That an employer engaged in a complicated and dangerous business is under obligation to prescribe rules for its orderly and safe conduct is a well-settled principle of the law of master and servant. * * * But this rule presupposes a complicated business, involving danger to those conducting it, unless it be managed upon some prescribed system. A railway business is an example. * * * Unless the business be of such a complex and dangerous character as to require that it shall be conducted upon a system or scheme, in order to secure the orderly conduct of the business, and the safety of those engaged in it, the master's obligation to supply a safe place for his work to be done, and to keep it safe, does not impose the duty of always keeping it in a safe condition so far as its safety depends upon the proper performance of the very work which his servants have there undertaken to do. If a negligent manner of doing the work makes a place less safe, that is one of the risks which all engaged in the work have assumed as a risk of the occupation."

See, also, Central Ry. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; American Bridge Co. v. Seeds, 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041; Portland G. M. Co. v. Duke, 164 Fed. 180, 90 C. C. A. 166; Dill v. Marmon, 164 Ind. 507, 73 N. E. 67, 69 L. R. A. 163; Wagner v. City of Portland, 40 Or. 389, 67 Pac. 300, 60 Pac. 985; Anderson v. Oregon Ry. Co., 28 Wash. 468, 68 Pac. 863; Hermann v. Port Blakely Mill Co. (D. C.) 71 Fed. 853; Donnelly v. San Francisco B. Co., 117 Cal. 417, 49 Pac. 559; Law v. Illinois Central Ry. Co. (C. C. A.) 208 Fed. 869; Ry. Co. v. Hart, 176 Fed. 245, 250, 100 C. C. A. 49; Labatt, Master and Servant (2d Ed). vol. 4, § 1527.

What need was there here for an elaborate scheme or plan? The task was a simple one. The timbers could be gotten to the ground with entire safety, either by taking them back down the conveyor or by throwing them directly to the ground. If the latter course was adopted, it was necessary only to keep a lookout to insure against danger. Was it to be supposed that Fennell needed to be advised by some plan or specific rule of the method which he should adopt? That was a detail which presumably could with safety be left to his common sense. Men generally understand that it is carelessness to throw down a heavy object from an elevation without first taking the

precaution to see that no one is underneath, and an employer has the right to assume that a mature, reasonably intelligent employé will take the precaution dictated by an ordinary measure of common sense.

The judgment is affirmed, with costs to defendant in error.