## UNION PAC. R. CO. v. MARONE.

(Circuit Court of Appeals, Eighth Circuit. October 26, 1917.)

No. 4883.

1. COURTS ⬤⇒372(3)—PRECEDENTS—DECISIONS OF STATE COURT.

The liability of a master for personal injuries of his servant is a question of general law; and, in the absence of state statute, it is not governed in the federal courts by decisions of state courts, but by the common law and rules of decision of the Supreme Court and other federal courts.

2. NEGLIGENCE ⬤⇒1—WHAT CONSTITUTES.

Negligence is a breach of duty, and where there is no duty or no breach, there is no negligence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

3. MASTER AND SERVANT ⬤⇒101, 102(8), 236(1)—INJURIES TO SERVANT—DUTIES OF MASTER AND SERVANT—PROVISION AND OPERATION.

The duty of a master is one of provision, while that of a servant is one of operation, it is the duty of the master to exercise reasonable care to provide a reasonably safe place in which, and reasonably safe machinery or appliances with which, the servants may do the work assigned to them, and it is the duty of the servant to exercise reasonable care so to use the place, machinery, and appliances furnished and so to conduct the operations intrusted to him as to protect himself from risk, danger, and injury, and neither the master nor the servant is liable for a breach of the other's duty.

4. MASTER AND SERVANT ⬤⇒177, 227(1)—INJURIES TO SERVANT—NONLIABILITY OF MASTER—SERVANT'S NEGLIGENCE OF OPERATION.

Where the place in which a servant is required to work, or the machinery or appliances with which he is required to work, or the method of doing the work, becomes dangerous, and results in injury only because of the negligence of the injured servant, or of his fellow servants, the master is not liable.

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. MASTER AND SERVANT ⬅191(1)—INJURIES TO SERVANT—"FELLOW SERV-ANTS"—"COMMON SERVICE."**

All who enter into the service of a common master except those who become heads of and vested with absolute control of separate departments or branches of a great and diversified business thereby become engaged in a common service, and are fellow servants in all they do except that which they do in discharge of the master's nondelegable duty of provision.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Common Service; First and Second Series, Fellow Servant.]

**6. MASTER AND SERVANT ⬅216(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.**

In the absence of statutory provision to the contrary, each servant by accepting his employment voluntarily assumes the risk and danger of the negligence of his fellow servants in the discharge of their duty of operation, whether those duties are of superintendence and direction, or those of equal or subordinate service.

**7. MASTER AND SERVANT ⬅203(1, 3)—INJURIES TO SERVANT—ASSUMPTION OF RISK.**

A servant assumes the ordinary risks and dangers of his employment, and the extraordinary risks and dangers which he knows and appreciates.

**8. MASTER AND SERVANT ⬅222(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.**

Neither the order of a vice principal to a servant to work in a dangerous place, or in a dangerous way, nor his assurance of the servant's safety, nor the servant's fear of losing his job will relieve the servant from his assumption of risk and danger, where they were readily observable and were known and appreciated by him, unless the vice principal makes a promise to remove them.

**9. MASTER AND SERVANT ⬅243(1)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER.**

Plaintiff, a section man, while assisting in the cutting of a rail with a sledge hammer and chisel, was injured by a piece of steel, which was chipped off and driven into his eye. A rule of the railroad company declared that goggles provided for that purpose should be worn when cutting rails with a track chisel, and such goggles were in the toolhouse when the accident occurred. A short time before the accident, while cutting other rails, a piece of steel chipped off and struck plaintiff on the wrist. On the day of the accident plaintiff told his foreman that he wanted something to protect his eyes, but the foreman replied, "Go on; that is all right; we never use them;" and plaintiff, fearing to lose his job, did as he was directed. *Held*, that the railroad company, having made its order and furnished goggles, was not negligent.

**10. MASTER AND SERVANT ⬅189(3)—INJURIES TO SERVANT—"FELLOW SERV-ANTS."**

In such case, as the work of cutting the rails was merely one of operation, the foreman was plaintiff's fellow servant for whose negligence the railroad company was not liable.

**11. MASTER AND SERVANT ⬅219(15)—INJURIES TO SERVANT—VICE PRINCIPAL—NEGLIGENCE.**

In such case, as the danger was obvious to plaintiff, having been brought to his attention by the previous chip of steel which struck him in the wrist, he assumed the risk, and the company was not liable, though the section foreman be treated as a vice principal.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Michael Marone against the Union Pacific Railroad Com-

pany. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

A. G. Ellick, of Omaha, Neb. (Edson Rich, of Omaha, Neb., on the brief), for plaintiff in error.

William F. Gurley and David A. Fitch, both of Omaha, Neb., for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. The plaintiff below, Mr. Marone, recovered a judgment against his master, Union Pacific Railroad Company, for an injury to his eye, which he claimed was caused by the negligence of the company, and the company insists that the trial court erred, in that it failed to direct a verdict in its favor at the close of the trial. These were the facts: Marone was and had been for some time working for the company as a section man under John Anderson, the foreman of his gang. The company had made and put in force a rule that, "When cutting rails with a track chisel, those doing this work must wear goggles provided for that purpose," and had provided suitable goggles, and they were in the toolhouse at Omaha where the accident happened. The company had also provided suitable saws with which to cut rails. There was testimony that the ordinary custom and practice of railroad companies was to cut such rails as the plaintiff was cutting at the time of the accident with saws, and on the other hand there was testimony that the usual custom was to cut them with a sledge hammer or a maul and a chisel, and for the purpose of this decision the former testimony must prevail. A short time before the day of the accident, while Marone was cutting a rail with a sledge hammer and chisel, a piece of steel was chipped off, and it struck him in the wrist. In the afternoon of July 7, 1916, before the accident which happened on that day, the foreman, Anderson, directed Marone and two other members of his gang to cut some rails with a sledge hammer and chisel. Marone told him he wanted something to protect his eyes, because he was scared the other day when he received the piece of steel in his wrist. Anderson answered, "Go on; that's all right; we never use them." Marone testified he went on "because he was scared to lose his job," and while he was swinging the sledge hammer to cut the rail with the chisel the piece of steel was chipped off and driven into his eye. Did these facts present any substantial evidence of negligence of the company which caused the injury to the plaintiff?

[1] 1. The liability of a master for the personal injuries of his servants is a question of general law; and, in the absence of a state statute, it is not governed in the federal courts by the decisions of the courts of the states, but by the common law and the rules established by the decisions of the Supreme Court and of the other federal courts. Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 370, 13 Sup. Ct. 914, 37 L. Ed. 772; Gardner v. Michigan Central R. R. Co., 150 U. S. 349, 358, 14 Sup. Ct. 140, 37 L. Ed. 1107; Beutler v. Grand Trunk Ry. Co., 224 U. S. 85, 32 Sup. Ct. 402, 56 L. Ed. 679; Brooks v. Central Sainte Jeanne, 228 U. S. 688, 694, 33 Sup. Ct. 700,

57 L. Ed. 1025; Railroad Co. v. Lockwood, 17 Wall. 357, 367, 368, 21 L. Ed. 627; Hough v. Railway Co., 100 U. S. 213, 226, 25 L. Ed. 612; Myrick v. Michigan Central Ry. Co., 107 U. S. 102, 109, 1 Sup. Ct. 425, 27 L. Ed. 325; Lake Shore, etc., Ry. Co. v. Prentice, 147 U. S. 101, 106, 13 Sup. Ct. 261, 37 L. Ed. 97; Newport News & M. V. Co. v. Howe, 52 Fed. 362, 3 C. C. A. 121; Kinnear Mfg. Co. v. Carlisle, 152 Fed. 933, 936, 82 C. C. A. 81, 84; Illinois Central R. Co. v. Hart, 176 Fed. 245, 251, 100 C. C. A. 49, 55, 52 L. R. A. (N. S.) 1117; Twecten v. Tacoma Railway & Power Co., 210 Fed. 828, 831, 127 C. C. A. 378, 381.

[2-4] 2. Negligence is a breach of duty, and where there is no duty or no breach thereof there is no negligence. The duty of the master is one of provision. The duty of the servant is one of operation, and neither is liable for the negligence of the other. It is the duty of the master to exercise reasonable care to provide a reasonably safe place in which, and reasonably safe machinery or appliances with which, the servants may do the work assigned to them, and for causal negligence in the discharge of this duty the master is liable and the servants are not. It is the duty of the servants to exercise reasonable care so to use the place, machinery, and appliances furnished, so to conduct the operations intrusted to them, as to protect themselves from risk, danger, and injury, and for a breach of this duty the servants are liable and the master is not. Where the place in which the servant is required to work, or the machinery or appliances with which he is required to work, or the method of doing the work, is made or becomes dangerous and results in injury only because of the negligence of the injured employé, or because of the negligence of his fellow servants, or because of the concurring negligence of both, the master is not liable, for such negligence is a breach of the duty of operation and not a breach of the duty of provision. Quebec Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397, 33 L. Ed. 656; Central Railroad Co. v. Keegan, 160 U. S. 259, 262, 264, 267, 16 Sup. Ct. 269, 40 L. Ed. 418; Northern Pacific R. Co. v. Charless, 162 U. S. 359, 361, 363, 364, 365, 16 Sup. Ct. 848, 40 L. Ed. 999; Northern Pacific R. Co. v. Peterson, 162 U. S. 346, 349, 358, 16 Sup. Ct. 843, 40 L. Ed. 994; Alaska Mining Co. v. Whelan, 168 U. S. 86, 89, 18 Sup. Ct. 40, 42 L. Ed. 390; Northern Pacific Ry. Co. v. Dixon, 194 U. S. 338, 339, 346, 347, 24 Sup. Ct. 683, 48 L. Ed. 1006; Martin v. Atchison, Topeka & S. F. Ry. Co., 166 U. S. 399, 401, 403, 17 Sup. Ct. 603, 41 L. Ed. 1051; Texas & Pacific Ry. Co. v. Bourman, 212 U. S. 536, 539, 541, 29 Sup. Ct. 319, 53 L. Ed. 641; Beutler v. Grand Trunk Ry. Co., 224 U. S. 85, 88, 32 Sup. Ct. 402, 56 L. Ed. 679; St. Louis, I. M. & S. Ry. Co. v. Needham, 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833; Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 103, 52 C. C. A. 48, 51, 57 L. R. A. 712; Pennsylvania Co. v. Fishback, 123 Fed. 465, 467, 59 C. C. A. 269, 271; Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Howard v. Denver & Rio Grande Ry. Co. (C. C.) 26 Fed. 837; Northern Pacific R. R. Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; Grady v. Southern Ry. Co., 92 Fed. 491, 34 C. C. A. 494; Armour v. Hahn, 111 U. S.

313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440; City of Minneapolis v. Lundin, 58 Fed. 525, 528, 7 C. C. A. 344; Lach v. Burnham (C. C.) 134 Fed. 688; Cleveland, C., C. & St. L. Ry. Co. v. Brown, 73 Fed. 970, 972, 20 C. C. A. 147; Deye v. Lodge & Shipley Machine Tool Co., 137 Fed. 480, 70 C. C. A. 64; Illinois Central R. Co. v. Hart, 176 Fed. 245, 251, 100 C. C. A. 49, 52 L. R. A. (N. S.) 1117; Wood v. Potlatch Lumber Co., 213 Fed. 591–594, 130 C. C. A. 171; Baltimore & Ohio R. Co. v. Brown, 146 Fed. 24–29, 76 C. C. A. 482; Brooks v. Central Sainte Jeanne, 228 U. S. 688, 693, 33 Sup. Ct. 700, 57 L. Ed. 1025; Dayton Coal & Iron Co. v. Dodd, 188 Fed. 597, 602, 609, 110 C. C. A. 395, 37 L. R. A. (N. S.) 456; Kelly v. Jutte & Foley Co., 104 Fed. 955, 44 C. C. A. 274; Olson v. Oregon, etc., Co., 104 Fed. 574, 575, 44 C. C. A. 51.

The case of Kreigh v. Westinghouse & Co., 214 U. S. 249, 254–258, 29 Sup. Ct. 619, 53 L. Ed. 984, is a striking illustration of this principle. In that case two charges of negligence, one of provision, in that the master failed to rig its derrick "with two ropes, one attached on either side of the end of the boom, to be used to haul it back and forth, and for the purpose of steadying its operation, or" with a lever attached "to the mast in such a way that a man operating the lever could control the swing of the boom" (214 U. S. 254, 257, 29 Sup. Ct. 619, 53 L. Ed. 984), the other a negligence of operation, in that the men operating the boom swung a bucket attached to the boom outward against the plaintiff, a fellow workman, without giving him any signal or warning (214 U. S. 255, subds. 2, 3, 29 Sup. Ct. 619, 53 L. Ed. 984), the Supreme Court concluded that the employer was not liable for the latter because it was a negligence of the fellow servants, but that there was evidence of "experts that the proper construction of such a derrick required that its boom should be rigged with two guy ropes instead of one, or that the mast should be provided with a lever by means of which the men in control could safely operate the boom"; that it was, therefore, a question for the jury whether the injurious effect of the derrick "was not attributable to faults of construction and equipment, as well as to negligent operation at the time of injury." That court held that, while the employer was not liable for the negligence of the fellow servants in pushing the bucket against the plaintiff without warning, it might be liable for negligence in the construction and equipment of the derrick if that negligence directly contributed to cause the injury, and closed its discussion of the facts with these words:

"We think that upon this branch of the case it was a question for the jury to determine whether the alleged defective appliances contributed directly to produce the injuries complained of." 214 U. S. 258, 29 Sup. Ct. 619, 53 L. Ed. 984.

In the earlier part of the opinion it declared the law applicable to the case in this way:

"The employé is not obliged to examine into the employer's methods of transacting his business, and he may assume, in the absence of notice to the contrary, that reasonable care will be used in furnishing appliances necessary to carrying on the business. Choctaw, Oklahoma, etc., R. R. Co. v. McDade, 191 U. S. 64, 68 [24 Sup. Ct. 24, 48 L. Ed. 96]. But while this duty is

imposed upon the master, and he cannot delegate it to another and escape liability on his part, nevertheless, the master is not held responsible for injuries resulting from the place becoming unsafe though the negligence of the workmen in the manner of carrying on the work, where he, the master, has discharged his primary duty of providing a reasonably safe appliance and place for his employés to carry on the work, nor is he obliged to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servant and his fellow workmen. Armour v. Hahn, 111 U. S. 313 [4 Sup. Ct. 433, 28 L. Ed. 440]; Perry v. Rogers, 157 N. Y. 251 [51 N. E. 1021]."

Other illustrations of this rule are numerous. A servant was injured by the failure of a porter and a carpenter of a steamship company securely to replace a portion of a railing on a ship which had been temporarily removed, and the stewardess fell into the water (Quebec Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397, 33 L. Ed. 656); by a reckless order of the foreman of a railroad gang and his failure to discharge his duty to be in his place on the rear car (Central R. R. Co. v. Keegan, 160 U. S. 259, 262, 264, 267, 16 Sup. Ct. 269, 40 L. Ed. 418); by the careless act of a section foreman in running a hand car to the serious injury of one of his gang (Nor. Pacific R. R. Co. v. Charless, 162 U. S. 359, 361, 363–365, 16 Sup. Ct. 848, 40 L. Ed. 999); by the negligent act of the foreman in stopping his hand car suddenly without warning (Northern Pacific R. Co. v. Peterson, 162 U. S. 346, 349, 358, 16 Sup. Ct. 843, 40 L. Ed. 994); by the negligent order of the foreman in charge of the work to open the gate of a chute without warning to one of his gang, whereby the latter and the rocks upon which he was working were carried through the chute (Alaska Mining Co. v. Whelan, 168 U. S. 86, 89, 18 Sup. Ct. 40, 42 L. Ed. 390); by the negligent act of a local telegraph operator in giving false information to the train despatcher, whereby a fireman and an engineer lost their lives by reason of a collision (Northern Pacific Ry. Co. v. Dixon, 194 U. S. 338, 339, 346, 347, 24 Sup. Ct. 683, 48 L. Ed. 1006); by the failure of a section foreman to look out for an approaching train, by his order to his workmen to look away from the train, his promise to warn them of its approach, and his failure to give the warning (Martin v. Atchison, Topeka & S. F. Ry. Co., 166 U. S. 399, 401, 403, 17 Sup. Ct. 603, 41 L. Ed. 1051); by the order of the section foreman directing one of his gang to jump off a moving train, and the reckless jerking of the train by the engineer (Texas & Pacific Ry. Co. v. Bourman, 212 U. S. 536, 539, 541, 29 Sup. Ct. 319, 53 L. Ed. 641); by the negligent act of the switching crew of a railroad company in running a car for repair into the special yard, where a repairer in the employ of the company was working upon another car, whereby he was killed (Beutler v. Grand Trunk Ry. Co., 224 U. S. 85, 88, 32 Sup. Ct. 402, 56 L. Ed. 679); by the failure of a servant engaged in operating a train to properly turn a switch (St. Louis, I. M. & S. Ry. Co. v. Needham, 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833); by the failure of a switchman to properly place red lights (Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 103, 52 C. C. A. 48, 51, 57 L. R. A. 712); by the direction of a yardmaster to an engineer and a conductor to take their train from a track on which another is standing (Pennsylvania Co. v. Fish-

back, 123 Fed. 465, 467, 59 C. C. A. 269, 271); by the failure of an engineer to obey his instructions, whereby a collision results (Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Howard v. Denver & Rio Grande Ry. Co. [C. C.] 26 Fed. 837); by the negligence of a conductor whereby the place where a laborer is building a culvert is made dangerous and he is struck by the locomotive (Northern Pacific R. Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009); by the disobedience of a rule which requires personal notice to workmen on certain tracks that cars are to be moved thereon (Grady v. Southern Ry. Co., 92 Fed. 491, 34 C. C. A. 494); by the omission of bricklayers to secure a timber in the wall, whereby an injury results to a carpenter who is directed to work about it (Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440); by the careless act of a foreman of a gang of laborers engaged in the construction of a sewer, which causes dynamite to be placed in the hole in a rock, and, after it has failed to explode, by his order to a workman ignorant of its presence to dig it out, whereby an explosion which injures the workman results (City of Minneapolis v. Lundin, 58 Fed. 525, 528, 7 C. C. A. 344); by the act of workmen in a mine in firing a blast, which loosens a superincumbent mass and makes the place beneath it dangerous so that one of them proceeding to work under it is injured by its fall (Finalyson v. Utica Min. & Mill. Co., 67 Fed. 507, 510, 14 C. C. A. 492); by the order of a foreman to his gang to remove iron braces from the top of a pile that is safe while undisturbed, whereby the pile is caused to topple upon a fellow servant (Lach v. Burnham [C. C.] 134 Fed. 688); by the act of a foreman directing one of his gang to cut away a post from under a shed whereby a portion of the structure falls upon him (Cleveland, C., C. & St. L. Ry. Co. v. Brown, 73 Fed. 970, 972, 20 C. C. A. 147); by the act of a foreman in causing the piling of heavy castings so negligently that they fell upon one of his gang (Deye v. Lodge & Shipley Machine Tool Co., 137 Fed. 480, 70 C. C. A. 64); by the act of a baggageman who kicks a block of ice out of his passing car against a signalman (Illinois Central R. Co. v. Hart, 176 Fed. 245, 251, 100 C. C. A. 49, 52 L. R. A. [N. S.] 1117); by the act of workmen carelessly throwing a piece of timber from a height upon the head of a fellow workman without warning, when all were working, with 500 or 600 other servants, in operating a sawmill (Wood v. Potlatch Lumber Co., 213 Fed. 591–594, 130 C. C. A. 171); by the failure of a foreman to have an iron plate which had been temporarily removed replaced, and by his order to one of his gang, without warning him of the absence of the plate, to assist in rolling a heavy hogshead over it (Baltimore & Ohio R. Co. v. Brown, 146 Fed. 24–29, 76 C. C. A. 482; by the act of the driver of an automobile whereby a fellow servant, making a trip therein in the course of his work, was injured (Brooks v. Central Sainte Jeanne, 228 U. S. 688, 693, 33 Sup. Ct. 700, 57 L. Ed. 1025); by the negligence of fellow servants in permitting cars on a switch track to collide with another train on which the plaintiff was being carried to or from his work by his master (Dayton Coal & Iron Co. v. Dodd, 188 Fed. 597, 602,

609, 110 C. C. A. 395, 37 L. R. A. [N. S.] 456); by the order of a superintendent to workmen under him to use a derrick furnished to raise heavy weights before it was securely fastened in its place (Kelly v. Jutte & Foley Co., 104 Fed. 955, 44 C. C. A. 274); by the failure of the officer of a steamship to close a hatchway through which a servant falls (Olson v. Oregon, etc., Co., 104 Fed. 574, 44 C. C. A. 51); by the failure of a foreman or other workmen employed to watch and remove or repair a rope in a derrick or other appliance, when it becomes worn or weak by use, to remove or repair it in time (Vogel v. Am. Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725; Johnson v. Boston Towboat Co., 135 Mass. 209, 46 Am. Rep. 458; Cregan v. Morston, 126 N. Y. 568, 572, 27 N. E. 952, 22 Am. St. Rep. 854; McGee v. Boston Cordage Co., 139 Mass. 445, 1 N. E. 745; Webber v. Piper, 109 N. Y. 496, 17 N. E. 216); and by numberless other acts of negligence of servants of railroad companies and of other employers which caused the places where their fellow servants were employed, or the appliances with which they were working, or the methods of operation which they were pursuing, to become dangerous and injurious. But the duty of the master does not extend to guarding the places or the machinery, or the method of operation against the dangers of such acts. They are violations of the primary duty of the servants, and the courts in these and other such cases have decided that the respective masters were not liable for injuries resulting from these acts of negligence.

[5, 6] All who enter into the service of a common master, except those who become heads of and vested with absolute control of separate departments or branches of a great and diversified business, thereby become engaged in a common service and are fellow servants in all they do, except that which they do in discharge of the master's nondelegable duty of provision. And in the absence of a statutory provision to the contrary each servant, by accepting his employment, voluntarily assumes the risk and danger of the negligence of his fellow servants in the discharge of all their duties of operation, whether those duties are those of superintendence and direction, or those of equal or subordinate service. Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 383, 384, 13 Sup. Ct. 914, 37 L. Ed. 772; Northern Pac. R. Co. v. Hambly, 154 U. S. 349, 360, 14 Sup. Ct. 983, 38 L. Ed. 1009; Martin v. Atchison, Topeka & S. F. R. Co., 166 U. S. 399, 401, 403, 17 Sup. Ct. 603, 41 L. Ed. 1051; New England R. R. Co. v. Conroy, 175 U. S. 323, 327, 328, 343, 346, 347, 20 Sup. Ct. 85, 44 L. Ed. 181; Central R. Co. v. Keegan, 160 U. S. 259, 262, 264, 267, 16 Sup. Ct. 269, 40 L. Ed. 418; Northern Pacific R. Co. v. Charless, 162 U. S. 359, 361, 364, 16 Sup. Ct. 848, 40 L. Ed. 999; Northern Pacific R. Co. v. Peterson, 162 U. S. 346, 349, 358, 16 Sup. Ct. 843, 40 L. Ed. 994; Alaska Mining Co. v. Whelan, 168 U. S. 86, 89, 18 Sup. Ct. 40, 42 L. Ed. 390; Northern Pacific R. Co. v. Dixon, 194 U. S. 338, 339, 346, 24 Sup. Ct. 683, 48 L. Ed. 1006; Texas & Pac. Ry. Co. v. Bourman, 212 U. S. 536, 539, 541, 29 Sup. Ct. 319, 53 L. Ed. 641; Beutler v. Grand Trunk Junction Ry., 224 U. S. 85, 88, 89, 32 Sup. Ct. 402, 56 L. Ed. 679; Brooks v. Central Ste. Jeanne, 228 U. S. 688, 693, 33 Sup. Ct. 700, 57 L. Ed.

1025; City of Minneapolis v. Lundin, 58 Fed. 525, 527, 7 C. C. A. 344, 346; Weeks v. Scharer, 111 Fed. 330, 335, 49 C. C. A. 372, 377; Gulf Transit Co. v. Grande, 222 Fed. 817, 819, 820, 138 C. C. A. 243; Deye v. Lodge & Shipley Mach. Tool Co., 137 Fed. 480, 482, 483, 70 C. C. A. 64; Dayton Coal & Iron Co. v. Dodd, 188 Fed. 597, 602, 110 C. C. A. 395, 37 L. R. A. (N. S.) 456; Baltimore & Ohio R. Co. v. Brown, 146 Fed. 24–29, 76 C. C. A. 482; Wood v. Potlatch Lbr. Co., 213 Fed. 591, 593, 594, 130 C. C. A. 171; Victor American Fuel Co. v. Eidsen, 237 Fed. 999, 150 C. C. A. 649; Missouri Valley Bridge & Iron Co. v. Walquist, 243 Fed. 120, —— C. C. A. —— (C. C. A. 8th Circuit) filed May 14, 1917.

[7, 8] A servant assumes the ordinary risks and dangers of his employment and the extraordinary risks and dangers which he knows and appreciates. Neither the order of a vice principal to the servant to work in a dangerous place, or in a dangerous way, nor his assurance of the servant's safety, nor the servant's fear of losing his job, will release the servant from his assumption of the risk and danger where they were readily observable and were known and appreciated by him, unless the vice principal makes a promise to remove them as an inducement for the servant's continuance in the service. Chicago, B. & Q. R. Co. v. Shalstrom, 195 Fed. 725, 729, 115 C. C. A. 515, 45 L. R. A. (N. S.) 387, and cases there cited; Seaboard Air Line v. Horton, 233 U. S. 492, 496, 503, 504, 507, 508, 34 Sup. Ct. 652, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Bunt v. Sierra Butte Gold Min. Co., 138 U. S. 483, 484, 485, 11 Sup. Ct. 464, 34 L. Ed. 1031; Musser Sauntry; etc., Co. v. Brown, 126 Fed. 141, 143, 144, 61 C. C. A. 207; Walker v. Scott, 67 Kan. 814–816, 818, 64 Pac. 615; Showalter v. Fairbanks, Morse & Co., 88 Wis. 376, 60 N. W. 257, 258; Toomey v. Steel Works, 89 Mich. 249, 50 N. W. 850, 851; Kean v. Rolling Mills, 66 Mich. 277, 33 N. W. 395, 399, 400, 11 Am. St. Rep. 492; Lamson v. American Axe & Tool Co., 177 Mass. 144, 145, 58 N. E. 585, 83 Am. St. Rep. 267, opinion by Holmes, Chief Justice, now Mr. Justice Holmes; Bradshaw, etc., v. Railway Co. (Ky.) 21 S. W. 346, 347.

[9-11] The argument of counsel for Mr. Marone is that the order of the foreman of his gang to him to go and assist in cutting the rails with a sledge hammer and a chisel and his reply to Marone's declaration that he wanted something to protect his eyes, to "Go on, that is all right; we never use them"—constituted substantial evidence of liability of the railroad company for his injury. But the established rules of law and the decisions of the courts which have been cited and by which it is the duty of this court to be governed leave no escape from the conclusion that this argument cannot prevail: (1) Because there was undisputed evidence that the company by adopting a rule that those cutting rails with a chisel must wear goggles and by providing the goggles had exercised reasonable care to discharge its duty of provision, and there was no substantial evidence that it had failed to do so; (2) because the foreman in his act of directing Marone what to do and in his answer to his protest was discharging a duty of operation, a duty of the servant, and not a duty of provision, not a duty of the master. In the discharge of that duty he was not a vice principal, but a fellow

servant of Marone, the risk of whose negligence Marone had assumed; and (3) because if the foreman had been a vice principal of the company in his acts directing Marone what to do and answering his protest, the undisputed testimony is that the risk and danger of his work with the sledge hammer and the chisel were readily observable, had been sensibly experienced by Marone by receiving from them a steel chip in his wrist, and were fully known and appreciated by him. The judgment below must therefore be reversed, and the case must be remanded to the court below, with directions to grant a new trial; and it is so ordered.

STONE, Circuit Judge, concurs in the result for the following reasons: There is no claim of any promise by the foreman to remedy the defect which later caused the injury. It is an instance of an employé remaining voluntarily at work after he knows the defect and knows the danger threatened to him by it. For an assurance to protect the workman he must have actually relied upon it, and must, under the circumstances, have been justified in that reliance. The testimony here clearly shows that he did not rely upon it, and is very persuasive that he would not have been justified in so doing.