[No. 3985.  Decided April 28, 1902.]

G. ANDERSON, *Respondent,* v. OREGON RAILROAD AND NAVIGATION COMPANY, *Appellant.*

MASTER AND SERVANT — INJURY TO EMPLOYEE — NEGLIGENCE OF MASTER — DUTY IN DIRECTION OF DETAILS OF SIMPLE WORK.

Negligence is not imputable to a railway company from the fact that a bridge carpenter, who had been directed with other carpenters and trackmen to load some rails upon a flat car, had the fingers of one hand crushed in lowering one of the rails, which had not been lowered in concert because of the failure of the man who gave the signals "high up" and "heave away" to give the second signal, since the work of loading the rails was simple and uncomplicated, and any dangers connected with it were obvious, and no duty was imposed upon the master requiring the direction of the details of such simple work.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

*W. W. Cotton* and *Lester S. Wilson,* for appellant.

*W. S. Lewis* and *James Dawson,* for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—Respondent was employed by appellant as bridge carpenter, and brings this action in the superior court of Spokane county to recover damages for injuries received in June, 1900, at Burke, Idaho, while assisting other employees of appellant to load rails on a flat car. The respondent and some sixteen other employees had commenced to pick up from the ground and load on the flat car a few steel rails. In loading the third rail, his hand was caught under the rail, and the first two fingers injured. The only charge of negligence against appellant was that, as the rails were loaded, the man who gave the signals, so that the men could lift and throw the rail in concert, failed to give the signal to "heave," and thereby the men did not throw the rail in concert, and that, owing to the failure of this united action, respondent was injured. At the conclusion of the evidence on the part of respondent, counsel for appellant moved for a nonsuit, and again, at the conclusion of the evidence on the part of appellant, moved that the jury be instructed to return a verdict in favor of appellant. These motions were denied, the cause submitted to the jury, and a verdict returned for respondent.

For the disposition of the cause here, it is only deemed necessary to determine the motion for nonsuit and that to instruct a verdict for the appellant. The material testimony of the respondent in his own behalf was as follows:

"Question. Whereabouts were you, Mr. Anderson, on the 4th of June last year? Answer. Burke, Idaho. Q. What were you doing? A. Well, we went up there to lay a piece of track right through the town there. Q. Who do you mean by 'We'? Q. Well, that is the bridge gang with the section men along the line. Q. What orders, if any, did you receive on the 4th of June last year, in regard to your

work? A. Well, the 4th of June we were ordered in the morning about half-past eight to go down a little ways through and load some rails on a flat car. Q. Who gave that order? A. Mr. Alex. Anderson, bridge foreman. Q. On receiving that order what, if anything, did you do? A. Well, we went down there, getting ready for to load the rails on the flat car. Q. When you got down there, what officers or agents, if any, of the defendant railway company were present? A. It was Mr. O'Brien, general superintendent. Q. Who else? A. And Mr. Coughlin, the roadmaster. Q. Who else, any foreman, or any other officer of the company present? A. Well, lots of these section foremen along the line. They didn't come anywhere near me. Q. What was said, if anything, when the bridge gang arrived down there where those rails were? A. Well, we got down there and we staid there a couple of minutes. Finally O'Brien steps up, and he says, 'Boys, this is the rails, take them up and throw them on the car.' Q. Who had charge of that work, throwing these rails on the car? A. Well, I did not come to learn his name; I understood he was a section foreman. Q. What, if any orders did this section foreman give you as to loading those rails? A. He didn't say nothing. I didn't hear him say nothing. Q. Didn't he give you any orders to load the rails at all? A. Oh, I thought you meant before we started. Q. Before you started; before you loaded the rails, what orders, if any, did this section foreman give you? A. 'Up high,' and 'heave away.' Q. Just describe now to the jury, Mr. Anderson, just how you loaded those rails, and how many you loaded, and how you got hurt. A. Well, when we got down there we stood around there a couple of minutes, and Mr. O'Brien stepped up and he says, 'Boys, these few rails, pick them up and throw them on the car,' and this section foreman he went around on the opposite side where we were, said 'up high' and 'heave away,' and it was the third rail that fell on my finger. He failed to give the orders. Said 'up high,' but he failed to give the order to 'heave away.' Q. Under whose directions were you working there, loading that car? A. Well, the section foreman.

. . . . . . . . . . . . . .

CROSS-EXAMINATION.

"Q. Now, Mr. Anderson, had you ever seen this man, who you say was giving the orders, before that morning? A. Never did. Q. For all you know he might have been a section man just by common consent, who gave the orders, might he not? A. I could not say. Q. All you know is simply there was some man there that hallooed 'up high,' and then 'throw?' A. Yes, sir. Q. How many men were working on the rail? A. Well, sir, there was sixteen or seventeen. Q. Pretty long rail? A. Thirty-foot rail. Q. What was the idea of giving these orders, that is, 'up high' and 'heave away'—was there a man to do that? A. Had to be commanded. Q. It was so all the men could lift together, wasn't it? A. Oh, yes; that was the understanding. Q. Is that the usual way the section men have of handling rails? A. I don't know nothing about it. Q. You don't know this man's name, you say? A. I could not say. Q. Did you ever see him since? A. No, sir. Q. You say that Mr. O'Brien was there? A. O'Brien was there. Q. You heard Mr. O'Brien say, 'Boys, put these rails up?' A. Was the very first one that spoke up. Q. Was Mr. Coughlin, the roadmaster, there too? A. He was right with O'Brien. Q. It was not either of these men giving the orders? A. No, sir. Q. Mr. O'Brien simply said, 'put these rails on the car?' A. 'Boys, pick them up, throw them on the car,' that is all he said. Q. You started to do that, and somebody, you say, hallooed 'up high,' and then 'throw?' A. Yes, sir. Q. You don't know his name? A. I could not say. Q. You could not swear what position he held with the company? A. I could not say."

There seems to be no conflict in the evidence in any particular, except as to the position occupied by the man who gave the signals to "heave"; the evidence on the part of the plaintiff tending to show that he took a position a few feet from the rail, and that on the part of the defendant tending to show that he had hold of the rail with the other men. The following facts are clear and without con-

troversy: That plaintiff was one of a set of bridge carpenters; that, under instructions of the bridge foreman, he and some others went to assist in loading a few steel rails on a flat car; that, when they arrived there, they, in connection with some of the other employees (trackmen), were directed by the superintendent of the company to load the rails; that they all took hold, and had placed two of them on the flat car in concert, and were lowering the third rail, when respondent's fingers were injured. It does not appear that the man who gave the signals in any sense represented the appellant's authority to supervise or direct the loading of the car. He was not the foreman of the bridge men. The authoritative direction to load the car was given by Mr. O'Brien, the superintendent, who was present. On these facts, we think the court should have directed a verdict in favor of defendant. The work of raising the rails a few feet and loading them on the flat car was simple, and not complicated, and any dangers connected with it were obvious to the common understanding. To do the work, and facilitate and make it easy, the men must lift and throw the rail in concert. The arrangements for doing this were mere matters of detail, to be performed by the men themselves, raising the rail. There was no duty imposed upon the master here which required the direction of the details in this simple work. There can be no fair inference from the evidence that the master assumed the direction of the details. The concert of action required among the men in raising the rail was obvious to each; the weight and movement could be felt by each; and it is immaterial to inquire whether the injury was the fault of some of the men engaged in their common effort to raise and lower the rail, or whether it was the fault of the plaintiff in failing to withdraw his hand in time. It

is apparent, we think, that there was no negligence imputable to appellant.

The judgment is reversed, with direction to enter judgment in favor of the defendant.

DUNBAR, FULLERTON, HADLEY, WHITE, ANDERS and MOUNT, JJ., concur.