[No. 14998. Department Two. January 10, 1919.]

GUST CULES, *Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

MASTER AND SERVANT (54, 57)—INJURIES—METHODS OF WORK—SIGNALS—LOADING CARS—NEGLIGENCE OF FELLOW SERVANTS. Under the Federal Employers' Liability act, it is actionable negligence upon the part of fellow servants, engaged in loading rails by pushing them up skids, for part of the crew at one end to disregard signals and fail to wait for the final signal calling for concerted action, whereby, through their hasty action, the other end slipped back and injured a member of the crew.

SAME (20-2)—INJURY—FEDERAL LIABILITY ACT—FELLOW SERVANTS—STATUTES. The effect of section 1 of the Federal Employers' Liability act (U. S. Comp. St., § 8657) is to abolish the doctrine of nonliability for the negligence of fellow servants engaged in interstate commerce and to put negligence on the part of fellow servants on a par with negligence of the master; and this, regardless of the other sections of the act relating to contributory negligence and assumption of risks; since a servant does not assume the risks of negligence of a fellow servant where the act was not habitual or usual.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 16, 1918, upon granting a nonsuit, dismissing an action for personal injuries sustained by a railroad laborer.. Reversed.

[1]Reported in 177 Pac. 830.

*Geo. H. Rummens* and *Frank E. Green,* for appellant.

*C. H. Winders,* for respondent.

FULLERTON, J.—The appellant, a track laborer in the employ of the respondent, received personal injuries while engaged with other workmen in loading steel rails upon a flat car. It is conceded that the respondent was a common carrier of interstate commerce by railroad, and that the work in which the appellant was engaged was in the prosecution of the carrier's business as such an interstate carrier. The appellant brought this action under the Federal employers' liability act (Act April 12, 1908, c. 149, 35 U. S. Stat. at Large, p. 65 [U. S. Comp St., §§ 8657-8665]) to recover for his injuries. At the trial of the case at the close of his evidence in chief, the respondent interposed a challenge to its legal sufficiency, which challenge the trial court sustained, entering a judgment dismissing the action. The appeal is from this judgment, the question presented being the sufficiency of the evidence to make a case for the jury.

While the witnesses vary somewhat in the details of their testimony, there is no substantial conflict between them as to the manner and cause of the accident giving rise to the injury. The process of loading the rails was this: Skids were inclined from the ground to the top of the car. A rail would then be moved from the pile in which it was located to the foot of the skid, when the workmen would take hold of it with their hands and slide it on the skids to within two or three inches of the top, where a pause would be made. This pause was for the purpose of obtaining concerted action in the final push which landed the rail on the car, it being desirable if not necessary to the safety of the workmén, that the rail be pushed over the end

of the skids onto the car at practically the same moment. Concert of action for the final push was obtained by the use of signals given by one of the workmen selected for the purpose. The signals were two in number, the one a warning signal for the workmen to get into position for the final push, and the second one for the concerted push which placed the rail over. At the time of the accident, the appellant was stationed at the extreme left of the group of workmen and beyond the skid on that side. When the rail then being raised was near the top of the skids, the workmen stopped its progress to await the signal from the workman in charge. The preliminary signal was given, when the workmen on the end of the rail opposite the appellant, without waiting for the second signal, pushed their end of the rail over onto the car. This act caused the rail to turn over and caused the appellant's end to slide backward upon the skid next to him. In so sliding, the third finger of the appellant's right hand was caught between the rail and the skid and cut off at the second joint.

There is some evidence in the record to the effect that occasionally, when the final signal was given, the workmen at one end of the rail would push that end of the rail over the end of the skid ahead of the workmen at the other end, but it was not in evidence that this fact ever resulted in injury, or was liable to cause injury, to the workmen on the other end. Neither was there any evidence that it was customary or usual for one side to push the rail over on the giving of the first signal, or any evidence that such a thing had occurred in the loading of this car, other than in the instance in which the appellant was injured.

The trial judge in sustaining the challenge to the sufficiency of the evidence rested his conclusion on the

decisions of this court in the cases of *Anderson v. Oregon R. & Nav. Co.*, 28 Wash. 467, 68 Pac. 863, and *Swanson v. Oregon-Washington R. & Nav. Co.*, 92 Wash. 423, 159 Pac. 379, remarking that he was unable to distinguish them from the case at bar. But these cases, it seems to us, while similar in their facts to the case under consideration, presented entirely different questions. The first was a common law action for personal injuries, brought prior to the enactment of the Federal employers' liability act, in which the fellow servant doctrine was in full force and effect. The injured plaintiff sought to escape the fellow servant rule by contending, first, that the common employer undertook to superintend the work and that his injury was the result of a negligent performance of the undertaking; and second, that the work was of such a complicated and dangerous character as to make it the nondelegable duty of the common employer to superintend it, and hence his liability if the injury was the result of negligence or want of proper superintendence of the work, even though the employer did not undertake to superintend it. The court denied these contentions, holding that the injury was the result of negligence on the part of a fellow servant for which the employer was not liable. The second case, though brought under the Federal act, was held not to fall within it. While facts were alleged tending to show that the employer was engaged in interstate commerce and that the injury was received while the injured party was employed therein, because of the negligence of a fellow servant, the court dismissed this branch of the case with the remark that there was no evidence to sustain it, discussing only the ground of complaint that the injured workman had not been sufficiently warned of the dangers attendant upon the

work. Plainly, therefore, the cases are not decisive of the questions presented by the present record. These questions are two, namely, was the appellant's injury the result of actionable negligence on the part of his fellow servants, and, if so, is the common employer liable under the Federal employers' liability act to answer for the injury; neither of which was present in the cited cases.

Passing then to the first of the questions suggested, we think it clear that the injury was the result of a negligent act on the part of the appellant's coemployee. The work in which the workmen were engaged was not work which could be performed by the workmen acting singly. The rails could not be so placed upon the car. Concert of action was thus not only necessary for the successful performance of the work, but was necessary, owing to the cumbersome nature of the material being loaded, to secure the safety of the workmen engaged in it. When, therefore, the men agreed upon a line of action and proceeded with the work in pursuance of the agreement, any departure therefrom by any number of the workmen would be a negligent act, whether wilfully or heedlessly performed, giving a workman injured thereby a right of action against them to recover for such injury; this on the principle that they failed to exercise that degree of care which ordinary prudence required of them under the given circumstances.

It is perhaps unnecessary to cite cases in support of the foregoing conclusion, but acts of a coworkman similar to the act in question were held to be negligent in *Cherpeski v. Great Northern R. Co.*, 128 Minn. 360, 150 N. W. 1091; *Janssen v. Great Northern R. Co.*, 109 Minn. 285, 123 N. W. 664, and *Meo v. Chicago & N. W. R. Co.*, 138 Wis. 340, 120 N. W. 344; and infer-

entially so held in *Truesdell v. Chesapeake & O. R. Co.,* 159 Ky. 718, 169 S. W. 471.

The liability of the common employer to answer for the injury depends upon the effect that is given to the Federal employers' liability act (Act of Congress, April 12, 1908, c. 149). The applicable provisions are §§ 1, 3 and 4 thereof. These read as follows:

"Sec. 1. Every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Sec. 3. In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this Act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

"Sec. 4. In any action brought against any common carrier under or by virtue of any of the provisions of this Act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 35 U. S. Stat. at Large, pp. 65, 66 (U. S. Comp. St., §§ 8657-8665).

The effect of the first section is to abolish, in this class of cases, the common law doctrine of nonliability on the part of the master for injuries arising to one of its servants by the negligent act of another, not participated in nor sanctioned by the master. It is also applicable to the appellant's situation. The respondent is a common carrier by railroad, engaging in interstate commerce. The appellant was one of its employees and suffered an injury while so employed in such commerce, resulting from an act of negligence of other employees of such carrier. Seemingly, therefore, if this section of the act is to be given effect as written, there can be no escape from the conclusion that the facts of the present case, as presented at the time the challenge to the evidence was interposed, showed *prima facie* a liability on the part of the respondent.

But it is said that this section must be read and construed in connection with the other sections quoted, and, when so read and construed, the conclusion is sustained that no liability was established by the evidence. But it is difficult to see what bearing the quoted sections can have on the question as here presented. The first section of the act deals with that branch of the law of personal injury known as the fellow servant rule, while the other sections deal with separate and distinct branches of the same law,

namely, the branches described by the phrases "contributory negligence" and "assumption of risk." In the third section it is provided that contributory negligence on the part of the injured employee shall not constitute a bar to a recovery, but that his damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee. Under it, perhaps, where the negligence was slight and the contributory negligence gross, the jury might be warranted in finding nothing more than nominal damages, but it is a question for the jury nevertheless; the court has no warrant to take the case from the jury because of the injured employee's contributory negligence. The fourth section merely provides that the injured employee shall not be held to have assumed the risk of his employment in any case where the violation by the employer of any statute enacted for the safety of the employee contributed to the injury of the employee. Undoubtedly this section leaves open to the employer the defense of assumption of risk in all cases in which the defense is applicable, save only where its own violation of some of the safety appliance acts has contributed to the injury. But plainly this cannot avail the respondent in the present case unless it is to be held that an employee assumes the risk of negligence on the part of his coemployees. Such, however, is not the general rule. The courts, with almost entire unanimity, hold that an employee does not assume the risk of negligence on the part of his fellow employee. An exception is made in some of the courts, particularly the Federal courts, where the negligence of the fellow employee is habitual or usual and the injured employee knew, or by reasonable diligence ought to have known, of the negligence. But even this modification is not available as a defense

in this action.  As we have indicated, the evidence before us fails to show that the negligent act causing the injury was habitual or usual.

But the respondent argues, if we have correctly gathered its purport, that the highest Federal court had held that an employee assumes the risk of injury from the negligent acts of his fellow employees.  The case cited as supporting the point is *Boldt v. Pennsylvania R. Co.*, 245 U. S. 441.  In that case the plaintiff's intestate, an experienced yard conductor, was killed by what was alleged to be the negligent act of a fellow employee.  At the trial upon the facts the plaintiff requested the court to charge the jury that "the risk the employee now assumes, since the passage of the Federal employers' liability act, is the ordinary dangers incident to his employment, which does not include the assumption of risk incident to the negligence of the carrier's officers, agents or employees." The trial court declined to so charge, and the case was before the appellate court on the single question whether or not there was error in refusing to give the instruction.  The court held that the instruction was properly refused, and while we confess to a difficulty in gathering from the opinion the precise grounds upon which the ruling was rested, it is inferable that it was rested upon the exception to the general rule before stated, namely, that the act of negligence complained of was obvious and fully known to the employee.  It is true that, in the concluding paragraph of the opinion, the court says that the request did not accurately state any applicable rule of law, and further, that the "risk held to have been assumed in the *Horton Case* [*Seaboard Air Line R. v. Horton,* 233 U. S. 492, Ann. Cas. 1915B 475, L. R. A. 1915C 1] from negligence of some officer, agent or employee;

and if the negligence of all these should be ex-
cluded in actions under the Employers' liability
act it is difficult to see what practical application
could ever be given in them to the established doctrine
concerning assumption of risk." But that it did not
mean by this to hold that an employee assumes in all
instances the risk of injury from the negligent acts
of his fellow employees is evident by an earlier part
of the opinion. There the court quotes parts of § 1 of
the act, and remarks that, in "cases within the pur-
view of the statute, the carrier is no longer shielded
by the fellow-servant rule, but must answer for an
employee's negligence as well as for that of an officer
or agent;" language that would have been inappro-
priate were it intended to be held that the risk is
assumed in all cases. It is worthy of note that the
construction we put upon the opinion is that put upon
it by the writer of the head note thereto. (See first
paragraph of the syllabus.)

In his brief, counsel for the respondent states:

"The Federal Employers' liability act, however,
does not relieve a railroad employee from the burden
of showing some negligence, nor cast upon the em-
ployer the burden of liability for accidents occurring
in simple work. In fact, the supreme court of the
United States has repeatedly held that negligence
must be shown . . ."

If it be meant by this that the injured employee
must show actionable negligence on the part of his
fellow employee resulting in his injury before a
recovery can be had against the common employer,
then we agree with the statement; and we find, as we
have heretofore attempted to demonstrate, that in
this instance the injured employee did show such negli-
gence. But if it is meant to be asserted that negli-
gence on the part of the common employer must be

shown in such a case before a recovery can be had against the employer, then we cannot follow counsel. It is our understanding that the very purpose of the liability act was to do away with the necessity of such showing; that its purpose was to create a. liability on the part of a common employer in the respondent's situation for an injury caused to one of its employees by the negligent acts of another, regardless of whether it was itself guilty of negligence. Nor has our research enabled us to find any decision of the court mentioned holding as the respondent asserts. On the contrary, the very case cited recognizes the opposing principle, and as we read the case of *Chesapeake & O. R. Co. v. De Atley,* 241 U. S. 310, it holds in terms that the liability act abrogated the common law rule of fellow servant and placed negligence of a coemployee upon the same basis as negligence of the employer. In the inferior Federal courts are many cases allowing a recovery where the negligence causing the injury was the negligence of a fellow servant not participated in by the common employer.

It is true there is this distinction between the cases cited and referred to and the case at bar: In the cited cases, the injured workman and the workman negligent were in more or less disconnected employments, in which each employee could act separately and in which the employee had his work pointed out by the common employer — such, for example, as an engineer of a locomotive engine injured by the negligent act of a yard worker in failing to close an open switch; while, in the case at bar, the injured employee was acting in concert with his coemployees and doing work requiring their united efforts, the manner of doing which he had a part and parcel in framing. But it would seem that this difference in the facts could hardly make a differ-

ence in the principle involved. The work, as we have shown, was work requiring concert of action on the part of the workmen, a fact as well known to the master as it was to the workmen themselves. The appellant had no part in selecting his coworkers; he was obligated to work with those employed by the master, and it is not shown that he had warning that any of them were so reckless as not to be trusted to follow out the work on the plan agreed upon; nor was it shown that the plan of the work was in itself unusual or extraordinary. Since the master had the right and authority to superintend the work, and since it failed to exercise this right and authority, but entrusted the work to the workmen themselves, it would seem manifest that it cannot be heard to deny its liability merely because the manner of doing the work was not directed by it.

Our conclusion is that the court erred in sustaining the challenge to the sufficiency of the evidence. The judgment is reversed and the cause remanded for trial.

MAIN, C. J., PARKER, MOUNT, and HOLCOMB, JJ., concur.